ALLEN VINCENT GRAMMER v. STATE OF NEBRASKA.

FILED MARCH 27, 1919. No. 20610.

1. **Jury: QUALIFICATIONS: OPINIONS.** An opinion of a juror on the merits of a criminal charge, if based solely on rumor or report, does not of itself disqualify him, where his *voir dire* examination shows that he can return a fair and impartial verdict upon the evidence adduced at the trial under the instructions of the court.

2. **Criminal Law: INSTRUCTIONS: OPINIONS OF TALESMEN.** Failure to instruct the jury specifically to disregard opinions expressed by rejected talesmen on their *voir dire* examination will not require a reversal, where the instructions as a whole direct the jury to base their verdict alone on evidence adduced at the trial.

3. ———: JOINT INFORMATION: SEPARATE TRIALS. Under an information charging two defendants with murder in the first degree, one as principal and the other as accessory before the fact, failure of the trial judge, on his own motion, to require separate trials *held* not error.

4. ———: CONFESSIONS: PROOF. Testimony that a confession was voluntary, or that there were no promises, threats, or inducements to influence defendant to make it, is not objectionable as being an opinion or a conclusion, where the circumstances under which the confession was made are in evidence.

5. ———: ———: FOUNDATION. A foundation for admitting in evidence a confession of guilt may be established by testimony of a witness that it was made to him and that neither he nor any one else in his presence or hearing made any promises or threats.

6. ———: ———: ADMISSIBILITY. Where two defendants are charged with murder in the first degree, one as principal and the other as accessory before the fact, a confession by the principal, if ad-

mitted by the accessory to be true, may be admitted in evidence against the latter.

7. ———: TRIAL: APPLAUSE. Laughter and applause by the audience during the trial in a felony case, *held* not. ground for setting aside the verdict, where the presiding judge vigorously rebuked the misconduct and directed the jury to disregard it, prejudice to the complaining party not being shown by the record.

8. ———: INSTRUCTIONS: ORAL MODIFICATION. An oral statement from the bench directing the jury that testimony of the witness being examined by counsel applies alone to one of two joint defendants is not an instruction within the meaning of the statutes requiring instructions to be in writing and forbidding oral modifications thereof.

9. Homicide: SENTENCE. Under an information charging two defendants with murder in the first degree, one as principal and the other as accessory before the fact, the duty of fixing the punishment of each at death or life imprisonment, if both are convicted, is imposed by the Criminal Code upon the jury.

ERROR to the district court for Howard county: BAYARD H. PAINE, JUDGE. *Affirmed.*

*Sterling F. Mutz,* for plaintiff in error.

*Willis E. Reed, Attorney-General, Orville L. Jones* and *W. A. Prince, contra.*

ROSE, J.

In the district court for Howard county, Alson B. Cole and Allen Vincent Grammer, defendants, were charged in a single information with murder in the first degree, Cole as principal and Grammer as accessary before the fact. The state's case may be summarized as follows: Lulu Vogt, a widow having considerable means, was the mother-in-law of Grammer, who was prompted by a desire for an inheritance from her to his wife. He planned the murder and agreed to give Cole $500 for committing it. During the night of July 5, 1917, Cole, pursuant to a previous understanding with Grammer, went to the home of Lulu Vogt, made the false statement that her daughter had been accidentally injured, enticed Lulu Vogt into an automobile, took her from her home and feloniously shot and

killed her in Howard county.  Grammer aided and abetted the murder.

It appears that, at different times and places, each made a confession giving details of the parts played by both.  Defendants were arraigned, pleaded not guilty, and went to trial together without any demand by either for a separate trial.  After the jury had been impaneled, Cole changed his plea to guilty.  The trial court held it was the province of the jury to fix at death or life imprisonment, the punishment for murder in the first degree, and for that purpose proofs showing the details of the homicide were admitted in evidence against Cole after he had pleaded guilty.  Grammer was tried and convicted.  The jury fixed the extreme penalty for both defendants, and the trial court imposed upon each the sentence of death.  Grammer alone prosecutes error.

In addition to complaints that disqualified jurors were erroneously impaneled, there is an assignment of error in the following form:

"The court erred in failing to instruct the jurors that they must not be prejudiced by the *voir dire* examination of talesmen."

The published confessions of defendants and other reports of their guilt had reached many excused talesmen, some of whom, during the course of the *voir dire* examination, expressed the opinion that defendants were guilty.  Statements of this nature were made in the presence of jurors already selected for the trial.  The procedure in this respect, the disqualifications of jurors, and the failure of the trial court to instruct the jury to disregard such expressions of guilt are subjects of extended argument.  Notwithstanding opinions of guilt based on rumors or reports, each juror qualified himself by his answers on his *voir dire* examination, and the record fails to show an abuse of discretion on the part of the trial court in ruling on the qualification of jurors.  Besides, Grammer did not exhaust his peremptory challenges.  A juror may serve impartially

and base his findings alone on evidence admitted at the trial under proper instructions, though he had been prompted by rumors or reports to express the opinion that accused was guilty, and such expressions of opinion by excused talesmen under the same circumstances are not necessarily conclusive proofs of prejudice or disqualification. From the charge as a whole, the jury knew that preconceived prejudice or rumor outside of the evidence adduced at the trial should have no place in their deliberations or verdict. There was no prejudicial error in the impaneling of the jury or in the failure to warn them directly "not to be prejudiced by the *voir dire* examination of talesmen."

It is insisted that the failure of the trial judge to order separate trials for Cole and Grammer is a ground for reversal. There was no demand for separate trials, and there was no error, therefore, in the failure to grant them.

Error in overruling objections to questions propounded to witnesses for the state in laying the foundation for the admission of Grammer's confession is assigned as a ground for reversal. The nature of these questions is indicated by those following: "State whether or not any force was used to get him to make that statement." "You may state whether or not any promises were made to him to get him to make that statement." "You may state whether or not any inducements were held out to Mr. Grammer to get him to make that statement." The objections are that the questions are leading, suggestive, and call for a conclusion. The circumstances under which the confession was made are disclosed by the evidence. Grammer exercised the privilege of cross-examination. The law applicable has been recently stated as follows:

"It is not error to permit a witness to testify that a confession was voluntary, as being an opinion or conclusion, if the circumstances of the confession are in evidence. Similarly, a question whether any promises, threats, or inducements were made to defendant,

before he made the statements sought to be proved, is not objectionable as calling for a conclusion." 16 C. J. 733, sec. 1510.

This assignment of error is therefore overruled.

Assigned error in the overruling of objections to the admission of the confession of Grammer is argued at some length. The substance of the objections is there was no foundation excluding the hypothesis that the confession was involuntary, it being asserted that the state's witnesses were erroneously permitted to testify to mere conclusions in answering incompetent questions. The confession is in writing. It gives the details of Grammer's connection with the homicide. It was signed by him in presence of witnesses who testified that it was voluntarily made. There is ample proof that it was obtained without threats or promises to inspire either hope or fear. The foundation, therefore, was sufficient. *State v. Kilduff*, 160 Ia. 388; *Sparf v. United States*, 156 U. S. 51, 15 Sup. Ct. Rep. 273; 2 Wharton, Criminal Evidence (10th ed.) sec. 646; 16 C. J. 728, sec. 1494. The trial court properly admitted Grammer's confession under the following rule:

"A proper predicate for the admission of a confession is laid where the witness to whom it was made testifies that neither he, nor any one else in his presence or hearing, made any promises or threats to defendant." 16 C. J. 734, sec. 1512.

Testimony inculpating Cole, including his confession, is condemned as prejudicial to Grammer. Each made a confession in writing. The facts were set out at length. In most essential respects the details were the same. Corroborating circumstances confirmed the truth of the confessions. Cole was first to confess. With his confession Grammer was confronted. When Grammer knew its contents, reciting as it did that Cole had been hired by Grammer to commit the murder, Grammer, according to the testimony of one of the witnesses, said that it was true. If the witness told the truth—a ques-

tion for the jury—Grammer admitted the truth of Cole's confession and made it his own. It was therefore admissible in evidence against Grammer. Since the jury were called upon to fix the penalty, details of the felonious acts of Cole were admissible in evidence against him, though he had pleaded guilty. In protecting Grammer from the testimony against Cole, the trial court went further than the requirements of the law.

Laughter and applause by auditors during the trial are condemned as grounds for a new trial. Such misconduct should not be tolerated; but under a constitution requiring a public trial it is sometimes difficult to prevent all manifestations of feeling on the part of the audience, where the public interest is aroused by a prosecution for a homicide. In the present case the trial judge announced from the bench a rule forbidding any demonstration of feeling on the part of the audience in regard to incidents of the trial. There were no doubt changes among the auditors during the protracted trial and an occasional recurrence of the offense, attributable perhaps to those who had not heard the admonitions from the bench. The rule, however, was frequently repeated. Misconduct on the part of the audience was severely condemned and the jury were directed to disregard it. At one time the trial judge said:

"Those in *the room must* understand absolutely no laughter will be permitted under any circumstances. You must absolutely remain silent. Any sallies made by a witness must be received without any applause or laughter. The jury are instructed to disregard any signs of merriment on part of anybody, however given. This must be strictly observed."

It is argued that the trial judge, in addition, should have punished the offenders, but the record does not show prejudice to Grammer in what occurred. The trial court was vigilant in protecting his rights and in

cautioning the jury to disregard laughter, applause and other expressions of public feeling.

The following is another assignment: "The court erred in giving oral instructions to the jury during the trial that certain evidence applied to the defendant Grammer."

In a single information it was charged that Cole feloniously shot and killed Lulu Vogt, and that Grammer hired, aided and abetted Cole. Defendants were tried together. To prevent one from being prejudiced by evidence against the other, the presiding judge, during the introduction of the proofs on part of the state, made a number of oral statements, the nature of which is indicated by the following:

"Jury instructed that the evidence of the conversation that the witness is about to give, relates only to Cole and does not bear upon Grammer."

It is argued that these rulings violated the statutes requiring written instructions and forbidding oral modifications' thereof. Rev. St. 1913, secs. 7850, 7854, 9119. Oral expressions like that quoted, when uttered by the trial judge during the examination of a witness, should be considered as limitations of the rulings on evidence. They are not generally classified as oral instructions within the meaning of the statutes. They are not principles of law applicable to the evidence. They are not erroneous merely because they are oral. *Metcalf v. Commonwealth*, 27 Ky. Law Rep. 702; *State v. Becton*, 66 Tenn. 138; *State v. Moore*, 117 Mo. 395; *State v. Good*, 132 Mo. 114; *Littell v. State*, 133 Ind. 577. A recent summary of the controlling principles follows:

"The charge or instruction required by law to be reduced to writing is only that which the court may have to say to the jury in regard to the principles of law applicable to the case and to the evidence; and hence an oral statement or communication by the court to the jury, which is rather in the nature of a caution-

ary direction, and not fairly and strictly a direction
or instruction upon some question or rule of law in-
volved in or applicable to the trial, need not be in
writing." 16 C. J. 1032, sec. 2468.

One of the assignments of error is based on an in-
struction to the jury as follows:

"In the case of the defendant Grammer, you can find
him guilty or not guilty; and, in the case you find him,
guilty, you should then fix his punishment at death or
life imprisonment."

The argument of Grammer is that he was accused
of abetting the murder, and that in such a case the
jury had no authority to fix the punishment; respon-
sibility in that respect resting on the trial judge. The
punishment of a guilty accessory whose principal is
found guilty of murder in the first degree is prescribed
by the Criminal Code as follows:

"If such principal offender would on conviction, be
punishable with death, or be imprisoned for life, then
such aider, abettor, or procurer shall be punished
with death or be imprisoned for life, the same as the
principal offender would be." Rev. St. 1913, sec. 8579.

"The principal offender" having been found guilty of
murder in the first degree, his punishment is determin-
able under the following provisions of the Criminal
Code:

"Whoever shall purposely and of deliberate and pre-
meditated malice or in the perpetration of or attempt
to perpetrate any rape, arson, robbery or burglary, or
by administering poison, or causing the same to be
done, kill another; or, whoever by wilful and corrupt
perjury or subornation of the same, shall purposely
procure the conviction and execution of any innocent
person, every person so offending shall be deemed
guilty of murder in the first degree, and upon con-
viction thereof shall suffer death or shall be im-
prisoned in the penitentiary during life, in the dis-
cretion of the jury." Rev. St. 1913, sec. 8581.

The latter section, as originally enacted, made death the penalty for murder in the first degree. By amendment in 1903 punishment by life imprisonment or death was left to the discretion of the jury. The amendment did not change the provision that the "aider, abettor, or procurer shall be punished with death or be imprisoned for life, the same as the principal offender would be." The "principal offender," under the amendment, is, upon a finding of guilty of murder in the first degree, punishable by life imprisonment or death, in the discretion of the jury. The legislature, by amending the Criminal Code in the manner indicated, evidently intended to confer upon the jury the power to fix life imprisonment as punishment of either principal or accessory upon a conviction for murder in the first degree, and the Criminal Code is so construed. A different conclusion is not required by that part of the Criminal Code declaring:

"In all trials for murder the jury before whom such trial is had, if they find the prisoner guilty thereof, shall ascertain in their verdict whether it be murder in the first or second degree, or manslaughter; and if such person be convicted by confession in open court, the court shall proceed by examination of witnesses in open court, to determine the degree of the crime, and shall pronounce sentence accordingly." Rev. St. 1913, sec. 9130.

These provisions relate to the degree of crime, and not to the fixing of the penalty for murder in the first degree. The decision of the trial court was in harmony with this view of the law.

All of the assignments of error have been considered without finding an error prejudicial to Grammer. In view of what has been said, further discussion of the points argued is unnecessary. The evidence leaves no basis for a reasonable doubt of Grammer's guilt. There was a fair and impartial trial. There is no reason to disturb the verdict of the jury. The judgment of the district court is affirmed, and Friday, June 6, 1919, is

fixed as the date for carrying into effect the sentence of the district court.

AFFIRMED.

LETTON and CORNISH, JJ., not sitting.

The following dissent to an order overruling a motion for rehearing was filed September 15, 1919.

SEDGWICK, J., dissenting.

Even if defendant was absolutely innocent of planning or designing the death of Mrs. Vogt, his conduct when he heard of her death was unusual and unnatural. When he found that Cole, his comrade and associate, had murdered his wife's mother, instead of delivering the murderer up to justice, he helped to prevent his apprehension and punishment. This looks bad for Grammer, and is entirely consistent with his being guilty as charged. I suppose we would not admit that these facts alone would justify his conviction. In order to support his conviction, reliance must be had upon his confession. The state did not put Cole upon the witness-stand. His statements are not sworn to. The only evidence of Grammer's guilt, then, is Grammer's confession. The record doesn't show that Cole now makes a more reasonable statement than the statements in any of his former confessions. It is said that the statements that he now makes exonerate Grammer entirely. I suppose a court cannot consider it in examining this record, and, if we could consider it, I do not know what effect the fact that he now does make such statements would have to counteract his former unverified statements.

There are a few important questions presented by this record:

1. Several of the jurors who sat upon the case were objected to on the ground that they had formed and expressed an opinion of the defendant's guilt, based upon reading his purported confession. In answer to that the state quotes the statute and leaves out the

vital point. Rev. St. 1913, sec. 9109, says it shall be a ground for challenge for cause that the proposed juror "has .formed or expressed an opinion as to the guilt or innocence of the accused." This is a direct statement, and ordinarily a man who has formed an opinion that the accused is guilty should not sit as a juror; but, under the proviso of the statute, he may still be allowed to sit under certain circumstances. If he states that he has formed an opinion "upon reading newspaper statements, communications, comments or reports, or upon rumor or hearsay, *and not upon conversations with witnesses of the transactions or reading reports of their testimony*" (the statute does not provide that if the juror has formed his opinion upon reading the testimony of witnesses), he may still be allowed to sit as a juror if he swears that he can render an impartial verdict upon the law and the evidence, and if the court is satisfied from all the circumstances that the juror is impartial. These witnesses had read the purported confession of Grammer, which was all the evidence that there was against him; and, if the statute is applied as it reads, after forming an opinion that he was guilty upon this testimony of the defendant himself, upon which they afterwards convicted him, they were not competent to sit as jurors. The defendant used all his peremptory challenges but one. With this one he might have excluded one of these six or seven jurors but that would not have helped matters any.

2. This alleged confession of Grammer's, upon which alone he is convicted, is very much discussed in the brief upon the motion for rehearing. The officers arrested Cole, told him that Grammer had given him away, and Cole then placed the burden of the crime upon Grammer himself. Cole, under the conditions, was compelled to confess that he had murdered the woman, and he got even with Grammer by his confession. The officers then took Cole in custody in another state, and started to Lincoln, and wired the officers at St. Paul,

Nebraska, to bring Grammer to Lincoln. A detective had been placed in the next cell to Grammer in the jail to work Grammer up if he could, and the officers brought this detective, Garrett, and Grammer, and with the help of a couple of Pinkerton detectives they took Grammer, in irons, to a room in the Lincoln Hotel. They locked the door, and the officers there labored with him, according to their statements, from 2½ to 3½ hours. Grammer then signed a detailed typewritten statement covering six or seven pages. I suppose the law is that a confession cannot be offered in evidence until it is proved to have been voluntary. This can ordinarily be done if it is voluntary, and the circumstances surrounding it are so simple and natural that the witnesses can tell all that was said and done before the alleged confession is made. These detectives had already discussed the division they would make of the reward that was offered, and while they had Grammer in this room and he was standing in the center of the room, they stood around him, but it was impossible for them to tell, and they make no attempt to tell, in a general way all that took place during those hours. Under those circumstances, was it competent for them to say in general terms that they did not use any duress, neither did they offer any reward or any hope of reward? Some of them testified that they told him it would be better for him to confess; others said what they told him was that it would be better for him to tell the truth. Of course Grammer, while these officers were surrounding him, knew what they considered to be the truth, and that the only way for him to tell the truth, in their estimation, was to tell it the way they wanted it. If there was other evidence of Grammer's guilt, if Cole had faced the jury and testified under oath to any facts incriminating Grammer, so that we had some evidence outside of this supposed confession of Grammer's that he was guilty, the case would be different. But now we have him convicted

and ordered to be executed on no other evidence than that contained in his supposed confession, which clearly is not his language, but is the language of these detectives.

3.  The syllabus of our opinion says: "Failure to instruct the jury specifically to disregard opinions expressed by rejected talesmen on their *voir dire* examination will not require a reversal, where the instructions as a whole direct the jury to base their verdict alone on evidence adduced at the trial." When the jury heard this general instruction that they must base their verdict alone on evidence adduced at the trial, would they suppose that the trial was the matter that took place in court, including the formalities of impaneling the jury and all? If they did, then the statements of these "rejected talesmen" would be, in their thought, a part of the trial. It would be better if the court had specially warned them against being influenced by the sworn statements of men that were called as jurors, as to their having read the confession and their conclusions of the defendant's guilt.

4.  Instruction No. 21, given by the court, is a new thing in the criminal jurisprudence. The jury were told plainly that they would "be warranted in convicting the defendant," and then are told further that it would be their duty to convict the defendant if they found certain things. The jury should be instructed that they cannot find the defendant guilty unless they find certain things. But they are told that it would *be their duty* to convict him if they do find so and so, and are also told that, without regard to such findings, they are warranted in finding the defendant guilty. Unless we felt confident beforehand that the defendant must be guilty, would we justify the giving of such an instruction? If there is any duty that devolves upon a jury in the trial of a capital charge, it is to acquit unless all of the facts necessary to a conviction are proved beyond a reasonable doubt.

5. It is pointed out in the brief that in *Thompson v. People,* 4 Neb. 524, this court decided that "no man's life should be forfeited because of the omission of his counsel to take exception." In this case we have said: "Failure of the trial judge, on his own motion, to require separate trials *held* not error." When the court knew that the evidence in the case was to be exclusively a realistic and extensive recital of details prepared by the detectives and in their language, purporting to be the confession of Cole, and the court also knew that there was no doubt of Cole's conviction, and the most important question that could ever devolve upon the court was to find out whether the defendant Grammer had procured Cole to commit this crime, should he have allowed the defendants to be tried together? The authorities cited in the brief seem to be to the effect that he should not.

6. Under these circumstances, when Cole, in the midst of the trial, withdrew his plea and entered a plea of guilty, the brief cites authorities to the effect that that works a separation of the defendants. If it was necessary that Cole's confession should be put in evidence for the purpose of showing the degree of his guilt, and the nature of his punishment, that matter should have been heard by itself, and should not have been allowed to have gone before the jury that were to determine the question of Grammer's guilt. When Cole's confession was offered in evidence the court sustained an objection to it as evidence against Grammer, and gallantly informed the jury that this document prepared by the detectives should not be considered as evidence against Grammer, but only as evidence against Cole. The question is seriously discussed as to whether it was necessary for the jury to hear any evidence against Cole at all, and whether it was not the duty of the court to determine the degree of his punishment. However, that may be, the reading of this so-called confession of Cole was very prejudicial

in the minds of the jury to the interests of Grammer.

A good many other questions are discussed in the brief that I will not take time to examine. I suggested the foregoing, and hoped that the judges would give them consideration.