## Miller v. Commonwealth.

(Decided October 6, 1931.)

·C. C. WILLIAMS and J. C. BIRD for appellant.

J. W. CAMMACK, Attorney General, and JAS. M. GILBERT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

The indictment, trial, and conviction of appellant, Floyd E. Miller, of the crime of making a false entry on the books of a bank, an offense created, and the punishment prescribed, by section 1186, Ky. Statutes, are here for review. Numerous objections and exceptions were made and saved by appellant, during the progress of the trial, but his counsel argues and insists that the judgment of conviction should be reversed on the grounds of:

(a) Irregularities in the formation of the grand jury which returned the indictment; (b) the admission of incompetent and the rejection of competent evidence; (c) erroneous instructions; (d) misconduct and demonstrations of the audience during his trial; (e) improper argument of the commonwealth's attorney.

In support of his motion to quash the indictment because of alleged irregularities in the selection and impaneling of the grand jury which returned the indictment, he filed the affidavits of himself and J. J. Felton. No counter affidavit, or other evidence, was offered in resistance of his motion. It may be conceded that on the showing made, and as it appears in the record, the trial court as an original proposition should have sustained his motion, and if the facts are true as stated in the supporting affidavits, the trial court failed improperly to investigate the selection of the list of grand jurors which was returned for that term of court. The statutes concerning the appointment of jury commissioners and the selection by them of persons for jury service in the manner pointed out by the statutes should be rigidly enforced by the circuit courts, and if there is probable cause for the court believing that the statutes have not been honestly, fairly, and in truth complied with, and if the identical list of jurors drawn from the wheel by the jury commissioners, or the court, and correctly listed by them or him, as directed by the statutes, is not returned by the sheriff, any juror whose name appears on the list returned by the sheriff, not so placed in the wheel and not so drawn, should not be permitted to serve. The method provided by the statutes (section 2243, Ky. Statutes) for filling the jury wheel and the selection of jurors, as well as the integrity of the list thereof returned to the court, should be honestly, jealously, and scrupulously regarded and protected, for any other course seriously reflects not only upon the integrity of the court, but strikes at the very root of the administration of the law by the courts. But, whatever may be our views of the duty of the trial judge under the circumstances disclosed by the record, section 281 of the Criminal Code of Practice, which is in this language, "The decisions of the court upon challenges to the panel, and for cause, or upon motions to set aside an indictment, shall not be subject to exception," precludes this court from exercising the power of review of appellant's motion. Therefore, by virtue of it, his motion to quash the indictment

on account of alleged irregularities in the formation of the grand jury which returned the indictment cannot be considered by this court. This power was taken from this court by legislative enactment, July 1, 1854. The wisdom of this Code provision is not for this court to consider or to determine. We are only concerned with its observance and enforcement. Its constitutionality has been determined by this court. Lake v. Com., 209 Ky. 832, 273 S. W. 511. If we were to estimate the number of cases in which a motion to set aside an indictment, or the impaneling of juries in which it has been construed by this court, we believe we are safe in saying the number would run into the hundreds. Many of them are listed in the annotations to section 281, Criminal Code of Practice. We have upheld and applied this provision so often that it would be an idle expenditure of time, here, to list and review the cases on the rulings of the trial court in criminal prosecutions upon these questions.

A proper consideration of appellant's objections to the instructions given to the jury requires a review of the evidence. It is shown by the evidence that the People's Bank of Mt. Vernon, in Rockcastle County, Ky., was organized many years ago, with a capital stock of $20,-000. On August 6, 1928, U. G. Baker, J. C. Griffin, S. D. Lewis, F. E. Miller, and R. H. Miller composed its board of directors; the appellant, Floyd E. Miller, was its cashier; W. H. Davis and H. T. Taylor were its bookkeepers. Floyd E. Miller, the appellant, had been its cashier 12 or 15 years next prior to August 6, 1928; W. H. Davis was a bookkeeper for two years, and H. C. Taylor about one year, prior thereto. In addition to the books kept of its customers' checking accounts, it carried savings accounts of other customers, which were kept in a book separate from that of its customers' checking accounts. The savings accounts were kept on loose leaves, which were removable from the leaf rack or tray. The cashier, F. E. Miller, was in active charge of the business affairs, and records of the bank. The bookkeepers were subject to his control and supervision. It does not appear that the president assumed or discharged any active duties as such. The appellant habitually permitted the checking patrons of the bank to overdraw their respective accounts. He was interested in, and looked after, numerous business projects of himself, mother, and brother. He, his mother, and brother, and the firms in which they were interested, had checking accounts in their respec-

tive names on the books of the bank. It was the custom of appellant to overdraw his own account, and to permit his mother and brother, and the firms in which they were interested, to overdraw their respective accounts. The amounts so entered to their credit on their accounts were over $33,000. He permitted numerous other persons and firms to overdraw their respective accounts. On the 6th day of August, 1928, as many as fifty accounts of the patrons of the bank had been, and at that time were, overdrawn. The appellant adopted a method by which he attempted to, and did, cover up such overdrafts appearing on the books of the bank. He would credit the overdrawn accounts with an amount appearing in some depositor's name in the savings account, then withdraw from the tray the customer's sheet containing the savings account, and place it somewhere in the bank, making a list thereof for himself. When the owner of the savings account would check on it, some other savings account would be used in its stead to cover the overdraft, and to enable the bank to honor the check against the savings account. On August 6, 1928, the appellant had in his possession, made out in his own handwriting, a list of those who had overdrawn and the respective amounts deposited to cover the overdrafts so obtained by the use of the savings accounts of the patrons of the bank as we have indicated. He began this method of taking care of the overdrafts of himself and others, some four or five years prior to August 6, 1928. During the two years Davis was in the bank, this plan of taking care of overdrafts was followed. The testimony of Davis and appellant conflict, in that Davis testified that appellant made the entries thereof, and appellant stated that Davis made them. The entries in the books were made with typewriter or posting machine. The appellant, when testifying, stated that he directed Davis so to cover up the overdrafts, and that Davis did so in obedience to his directions.

The indictment herein charges that appellant falsely entered upon the books of the bank on his own account this entry, viz., "8—6—28, $4,000," for his personal benefit with intent to commit a fraud, which entry was false and known by him so to be. To the instructions given, he objected and excepted. Instruction No. 1 closely follows the language of the indictment and aptly sets forth the essential facts constituting the ingredients of the crime charged, and required the jury to believe

them beyond a reasonable doubt before it could find the appellant guilty. Shipp v. Com., 101 Ky. 518, 41 S. W. 856, 19 Ky. Law Rep. 634; Richardson v. Com., 166 Ky. 570, 179 S. W. 458; Medlock v. Com., 216 Ky. 718, 288 S. W. 670. Instruction No. 2 was approved by this court in Shipp v. Com., supra, and instruction No. 3 was approved, in form, in Medlock v. Com., supra

The appellant especially and urgently complains of instruction No. 4, which defines an "accomplice" and instructs the jury that if it believed from the evidence beyond a reasonable doubt that W. G. Davis was an accomplice of appellant, the appellant could not be convicted unless the testimony of Davis was corroborated by other evidence tending to connect him with the commission of the crime charged in the indictment, and that the corroboration was not sufficient if it merely showed that the offense was committed and the circumstances thereof. He contends that the court should have peremptorily instructed the jury to find Davis to be an accomplice. The conflict in the testimony of Davis and the appellant wherein each insisted that the other entered upon the books of the bank the false entry of the figures, "6—8—28, $4,000.00," authorized the court to give instruction No. 4 as it was written. Whilst appellant entered a plea of not guilty, he testified in his own behalf and therein admitted facts sufficient in law to constitute the offense charged in the indictment. Morse v. Com., 129 Ky. 294, 111 S. W. 714, 33 Ky. Law Rep. 831, 894. His proffered excuse was that Davis actually made the entry on the books of the bank, designated in the indictment, yet he admitted that he directed him to do so. He admitted the existence of the overdraft at the time in his own account, and the method used to cover it, which fact, coupled with his admission that he directed Davis to make the entry to cover it, constitutes his guilt, equivalent to that which would have existed if he had himself actually made the entry. Even if Davis made the entry, it was made for the benefit of appellant and the act was committed at his direction. One may commit a crime by an agent as well as by himself, provided he incites or directs its commission. Fields v. Com., 202 Ky. 523, 260 S. W. 343. If one with criminal intent designs the commission of a criminal act and directs or employs another to carry it out, the act of the agent becomes the act of the principal, and the principal is criminally responsible therefor. Robinson's Criminal Law (2d Ed.) sec. 195,

page 203; 1 Wharton's Criminal Law (10th Ed.) sec. 135; Tramwill v. Com., 148 Ky. 624, 147 S. W. 36, 42 L. R. A. (N. S.) 207; Locke v. Com., 113 Ky. 864, 69 S. W. 763, 24 Ky. Law Rep. 654; Ellison v. Com., 69 S. W. 765, 24 Ky. Law Rep. 657; Cartwright v. Com., 196 Ky. 6, 244 S. W. 55; Wood v. Com., 229 Ky. 459, 17 S. W. (2d) 443; State v. Armstrong, 106 Mo. 395, 16 S. W. 604, 13 L. R. A. 419, 27 Am. St. Rep. 361.

The appellant having admitted in his testimony facts constituting his guilt of the crime charged in the indictment, even if instruction No. 4 is subject to the criticism now urged against it, upon consideration of the whole case, including his own testimony, it is plain that the substantial rights of appellant were not prejudiced thereby.

Section 340 of the Criminal Code of Practice provides:

"A judgment of conviction shall be reversed for any error of law (appearing on the record when, upon consideration of the whole case, the court is satisfied that the substantial rights of the defendant have been prejudiced thereby)."

Accepting and considering appellant's own testimony, his guilt is established, and the wisdom of the Code provision, supra, is abundantly shown. It is a fixed rule of practice that any essential fact necessary to convict a defendant may be established by the testimony of himself or of a witness in his own behalf. The appellant's testimony shows his guilt beyond a reasonable doubt, and he cannot now complain. Minniard v. Com., 214 Ky. 641, 283 S. W. 1001; Brittian v. Com., 200 Ky. 461, 255 S. W. 59; Marcum v. Com., 201 Ky. 527, 257 S. W. 714; Cardwell v. Com., 236 Ky. 676, 33 S. W. (2d) 695.

The appellant urges that the court erred in admitting and rejecting evidence. Without especially reciting herein each item of the evidence complained against, it is sufficient to say that some of them were not objected to at the time, and others, it is shown by the record, the appellant's objection thereto was sustained to the question asked by the commonwealth, and the question was not answered by the witness. Questions 20 and 29 propounded to the witness Davis, relating to whether he disclosed to the president or directors of the bank the method used by the employees to cover up overdrafts,

were not permitted to be answered. The relevancy of these questions is doubtful, but even if same be conceded to be material, the substantial rights of appellant cannot be said to be prejudiced by the court's refusal to permit the witness to answer them, for the reason that appellant's guilt of the charge under investigation is abundantly shown by his own testimony. Section 353, Criminal Code of Practice, applies to the question of the competency and incompetency of the evidence of which appellant complains, and controls our disposition thereof.

While the attorney for the commonwealth was making the closing argument, a colloquy occurred between him and one of the attorneys for the appellant, during which, it is claimed, the audience, which included a large number of the depositors of the bank, made a demonstration by holloing, clapping hands, and stamping feet, which was heard a distance of 300 to 400 feet from the courthouse. The appellant objected thereto and moved the court to discharge the jury. The court sounded his gavel, rebuked the audience for its demonstration, and admonished it that there must not be such a demonstration in the court, and that, if it occurred again, he would clear the courtroom. He also admonished the jury that the conduct of the individuals engaging in the demonstration had nothing to do with the trial, and for it not to allow any outside influence to interfere with it in the doing of absolute justice in the case; that it was the duty of the jury to try the case solely upon the facts heard from the witness stand and under the law as given by the court, and to render absolute justice under the facts and the law, with their consciences free from outside influence. The act and statements of the trial court were sufficient to protect the substantial rights of appellant against the influence of the demonstrations by the bystanders. State v. Murphy, 292 Mo. 275, 237 S. W. 529; Grammer v. State, 103 Neb. 325, 172 N. W. 41, 174 N. W. 507; State v. Caldwell, 181 N. C. 519, 106 S. E. 139. It will be presumed that the jury was controlled by the court's admonition and that no prejudice resulted. Rowlett v. Com., 222 Ky. 695, 2 S. W. (2d) 378; Reed v. Com., 235 Ky. 734, 32 S. W. (2d) 38.

In the closing argument to the jury, the attorney for the commonwealth pleaded to the jury to convict defendant, urging that the facts it had heard "fully justifies

and deserves the limit of the law." He followed up this statement with this language:

> "Many a poor man on the hillside and in the heads of the hollows, has suffered because of the conduct of this defendant. If you acquit a criminal like this man you invite and license other criminals to rob and loot the banks of the country and your money and mine will never be safe in a bank. You did not make the law and this man deserves the highest penalty."

The appellant objected to the use of this language, his objection was overruled, and he excepted. The record discloses at the time the making of the false entries on the books of the bank was discovered, a list of fifty individual accounts aggregating $58,542.23 had been utilized by him and those acting under his direction for the designed purpose of hiding their peculations from the board of directors and the state bank examiners. The evidence fails to disclose whether the fifty individuals, or any of them whose accounts were so used, lived on hillsides or in the heads of hollows, and the reference to them as occupying homes so situated may have been figurative or it may have been literally correct. In either event, it cannot be said that this unduly influenced the verdict of the jury. It is presumed that the jury knew the topography of the county and where those depositors, or some of them, whose names were given in the list, resided. It cannot be conceived that the attorney's reference thereto influenced the jury in reaching its verdict. Tyree v. Com., 212 Ky. 596, 279 S. W. 990; Eaton v. Com., 230 Ky. 250, 19 S. W. (2d) 218. As a part of the language complained of, he urged the jury to inflict the highest penalty; but the verdict returned by it fixed his punishment at seven years, which shows the jury did not comply with his request when it fixed the penalty. Under the prevailing and recognized rule of practice, much latitude is allowed an attorney in the argument of his case, and it is only when it clearly appears that he has gone outside the facts necessary to constitute the defendant's guilt, and has sought thereby to take an undue advantage of the accused, that this court is justified in interfering on account thereof. Lee v. Com., 142 Ky. 742, 135 S. W. 315. In Meredith v. Commonwealth, 148 Ky. 106, 146 S. W. 407, the attorney for the commonwealth urged the jury to return the highest penalty

known to the law and stated, "that this alone would stop bloodshed and crime." It was held not improper. Burton v. Com., 151 Ky. 587, 152 S. W. 545; Allen v. Com., 176 Ky. 475, 196 S. W. 160; Clark v. Com., 209 Ky. 51, 272·S. W. 11.

It is satisfactorily shown that appellant for a period of years continuously and persistently made, and directed to be made, false entries in the books of the bank for a fraudulent purpose, and considering the whole record it cannot be said the verdict of the jury is not abundantly sustained by the evidence, or that he has not received at the hands of the jury and the trial court a fair and impartial trial.

The judgment is affirmed.