## Vance v. Commonwealth.

May 6, 1947.

Edward P. Hill, Jr., Judge.

Edward L. Allen for appellant.

Eldon S. Dummit, Attorney General, and Guy H. Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

Some time on October 11, 1946, appellant shot and killed Sallie Tindzugloski, a small woman weighing around 115 pounds. They were cousins and both lived in the same neighborhood near Ligon, a mining town in Floyd County. That the two were not on friendly terms is developed by the evidence.

On submission the jury returned a verdict of guilty, fixing the penalty at life imprisonment. On appeal it is contended, as it was in motion for new trial, that (1) the verdict is flagrantly against the evidence, the result of passion and prejudice of the jury. (2) The court permitted incompetent and prejudicial evidence on the part of the Commonwealth. (3) Error in allowing the Commonwealth's attorney to call attention of the jury to the condition of a garment, and (4) counsel employed to aid in the prosecution made improper and prejudicial remarks in argument to the jury. The first point requires a recital of the proof, which is sharply conflicting.

Several nights prior to the homicide there was some trouble between the parties. Appellant claims

that deceased, her son and her sister came to his home and when he went out they used vile and threatening language. Their version was that they were passing the home, and appellant came out on the porch, using violent and threatening language. This episode perhaps led to the homicide. The sister says she begged him to go back into the house, and when he refused she "flew mad," and admits that she used the vile epithet, but that deceased said nothing except asking appellant to go back in the house.

The proof for the Commonwealth is that on the 11th, deceased, her two daughters, one 12 and the other 15 years of age had started down the road to get some coal, each having a water bucket, and met appellant, who was hauling coal on a sled. When he came near them he pulled his sled to the side of the road and stopped. Deceased said to her younger daughter, "Tommie you had better watch out or you will get shot," and looked back and laughed. Appellant then said, "Sallie you just want trouble, and G. D. you you are going to get it." Deceased replied, "Curt I don't want no trouble; I tried to keep it down the other night." Appellant replied, "You go on down that G. D. road and tend to your own business." The older daughter said, "There isn't enough Vances on Ligon to make us to." Appellant then said, "I will slap you," and deceased said "Don't slap her, slap me," and appellant struck deceased in the face, and the daughter hit him with the bucket. Deceased then started to hit appellant with her bucket, and he knocked it out of her hand; she stooped over to get it, and as she straightened up appellant stepped back and shot her; she died in a very few minutes. According to the undertaker the bullet entered a shoulder and ranged downward. He also testified that her mouth was bruised. The other daughter, and witnesses who were in the vicinity, in part corroborated the daughter Gladys.

Appellant's version (to some extent corroborated) conflicted with that of witnesses for the Commonwealth. He admits firing the fatal shot, but said he did so because he was in fear of his life. He was about 34 years of age and worked in the coal mines. On the day of the homicide he and his brother had gone to the mine to get a sled load of coal. At some point he met deceased, her

sister and daughter. He pulled to the side of the road to let them pass, and stepped back close to the fence. Some one said, "Watch out or you will get shot." Appellant asked them to go on and not make trouble. The deceased said, "We intend to kill you and this is as good a place as we will get to do it." He said they closed in on him, and "the girl struck me on the back of my neck with a paling and knocked me down; I caught to one side of the bank with my hand, and before I could get up both were pulling me and the girl beating me and the woman had me by the hair and punching me with a gun. The girl struck me again, and said, 'shoot him mama.' I was down on the ground and they were beating me," and he fired the one shot. A doctor who treated appellant said he had bruised places on the back of his neck, and appellant said he lost work on account of the bruises.

In addition to the evidence thus far stated, several witnesses testified that deceased had a bad reputation for "peace and violence," and there was testimony to the effect that appellant's reputation in these respects was good.

Counsel for appellant does not press the point that the proof was not sufficient to take the case to the jury, but contends that the verdict was flagrantly against the evidence. There was here sufficient proof to take the case to the jury, and where the proof conflicts the matter resolves itself into one for the jury's consideration. Without commenting on the proof to any extent, it may be observed that the weight of the proof, considering the wound on deceased's shoulder, and the course of the bullet downward, would indicate that appellant was not on the ground when he fired the shot. We also note that while he made denial as to statements made on the examining trial, as shown from the stenographer's notes, relating to matters occurring at the time of homicide, it was shown that he had not then stated that deceased had a pistol, or was pressing it against him; he then said that he could not see her hands, "because she was pulling my hair." There is no satisfactory proof that deceased was armed. If the proof of the Commonwealth was true, and this was a question for the jury, then appellant was guilty of murder. If his was true then he acted in self-defense. We have

often pointed out that where accused admits the doing of the act which caused the death, it is incumbent on him to offer proof which will convince the jury that the plea was sustained.

We take up now the specific charges of errors. The first is that the court erred in permitting the sister to testify that the cloak of deceased was buttoned when the shot was fired. The contention is, and it is true, that she was not an eyewitness to the homicide, and could not testify as to the condition of the coat at the time. It is not pointed out why this evidence was material. This was brought out when the witness was identifying the garment. She had testified that she had gone to the scene of the shooting, while her sister was still lying on the ground, and had examined the wound. The question of whether the garment was or was not buttoned at the time, was of no materiality. There was no contention that the bullet had not entered the shoulder of deceased through the coat. Being immaterial it could not be of any consequence one way or another.

It is complained that it was error to allow the Commonwealth's attorney to point out to the jury the places in the coat. We assume this is intended to mean that he should not have pointed out the bullet hole. The record shows that the garment was properly identified and introduced, and passed to the jury for examination. The record does not show what the attorney pointed out. The only reference was made when he passed the coat to the jury, and counsel for appellant said: "We object to the attorney pointing out places in the coat to the jury." There is no showing that he did more than to show the point of entrance of the bullet, a matter about which there was no dispute.

The final contention is that an attorney employed to assist in the prosecution, in argument to the jury made remarks that were prejudicial and not justified by the proof. During the argument the attorney said, with reference to what occurred at the time of the homicide: "Her two daughters both swear they were right by her side, and they tell you that they did not hit the defendant until he struck her in the mouth." Again, "And when that occurred they went to hitting him with a bucket, and he knocked the bucket out of this little girl's hand

and told her he would throw her in the creek." Objections made to these statements were overruled, as was objection to this remark made after reference to the prevalence of crime in the country: "I'll tell you how you can stop it; you can send a few of them to the electric chair; you can give some of them a life sentence, but that won't help. We'll get some Governor that will turn them loose."

The attorney was mistaken in his statement that both daughters said they did not strike appellant until after he struck deceased. Only one so testified. The proof does show that the older girl said that accused knocked the bucket out of deceased's hand, but there was no threat to throw the girl in the creek. It may be that in the heat of argument the attorney misquoted some of the testimony, but we are unable to see how this fact prejudiced the substantial rights of appellant. The jury heard and weighed the testimony, and the statements made could hardly have influenced them to any degree.

We cannot conceive that the jury was moved by the remarks of the attorney as to his belief of the proper course to stop crime, or what some Governor might do in case of imprisonment. If this was an appeal to the jury to inflict the death penalty it was ineffective. We have held in several cases that similar expressions where they were not such as would tend to inflame the minds of jurors, were not improper. Miller v. Commonwealth, 240 Ky. 346, 42 S. W. 2d 518, citing other case on this point. The rule is that courts must give reasonable latitude to counsel in argument, and it is only where it clearly appears that he has gone beyond the facts necessary to fasten guilt and has sought thereby to take undue advantage of the accused or arouse the passions of the jury, that we reverse on the ground of improper argument. Miller case, supra.

We are of the opinion that the alleged errors, or their combination, were not of sufficient gravity to justify a conclusion that appellant was prejudiced in his substantial rights. We are, therefore, compelled to affirm the judgment.

Judgment affirmed.