# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28 (4) (c), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS AUTHORITY IN ANY OTHER CASE IN ANY COURT OF THIS STATE.

$\mathfrak{Supreme}$ $\mathfrak{Court}$ $\mathfrak{of}$ $\mathfrak{Kentucky}$ FINAL

2005-SC-000792-MR

DATE _____ _____

WRENDA B. GALLIEN                                                      APPELLANT

                           ON APPEAL FROM THE COURT OF APPEALS
V.                                  2005-CA-001148-MR

HON. F. KENNETH CONLIFFE, JUDGE,
JEFFERSON CIRCUIT COURT, ET AL.                              APPELLEES

                    MEMORANDUM OPINION OF THE COURT

                                       AFFIRMING

        In this original action in the Court of Appeals, Appellant, Wrenda B.

Gallien, petitioned for a writ prohibiting the Jefferson Circuit Court from retrying her after

the Circuit Court granted a mistrial. The Court of Appeals denied the writ, holding that

the trial court's decision to declare a mistrial was manifestly necessary. Appellant now

seeks review of the order of the Court of Appeals as a matter of right.[1] For the reasons

stated herein, we affirm the denial of the writ.

        The facts, as well stated by the Court of Appeals, are as follows:

        In November 2003, the Jefferson County Grand Jury
        issued an indictment against Wrenda B. Gallien, charging
        her with thirteen (13) counts of prohibited activities relating to
        controlled substances, fifteen (15) counts of complicity to
        obtain or attempting to obtain a controlled substance by
        fraud or deceit, and nine (9) counts of wrongfully filling

_____

[1] Ky. Const. § 115.

prescriptions. The Jefferson Circuit Court selected a jury and commenced a jury trial in this matter on September 22, 2004.

The events relevant for this petition occurred on the third day of trial. During the trial proceedings on September 24, 2004, the respondent, Judge F. Kenneth Conliffe, counsel for the Commonwealth and counsel for the defendants[2] were engaged in a conference at the bench. At this bench conference, counsel for the Commonwealth indicated that it would close its case against the defendants after presenting one additional witness to the court. After this bench conference, a deputy sheriff requested to speak with the respondent in his chambers. At this point, the proceedings were recessed and the jury excused from the courtroom.

Upon his return to the courtroom, respondent informed the deputy sheriffs that the jury should remain outside the courtroom. Respondent then proceeded to inform counsel that the deputy sheriff had informed the court that, during the bench conference, a girl left her seat in the gallery, approached Gallien, got her attention and presented Gallien with a stuffed animal. Gallien accepted the stuffed animal from the girl. This exchange occurred in the presence of the jury and was captured on the video record of the trial. Respondent played the video record of these events to counsel.

After playing the videotape, respondent ordered the girl's father, Steven Deluka, to testify concerning the events that occurred during the bench conference. Deluka testified that his daughter wanted to give a small stuffed dog name "Courage" to Gallien for support. Deluka acknowledged that he and his daughter are friends of Gallien and that Deluka's daughter had no opportunity prior to this bench conference in which to give this stuffed toy to Gallien. Deluka denied planning this event with defense counsel or with Gallien.

Respondent then called Deputy Sheriff Clifford Gagel to testify. Deputy Gagel testified that he and Deputy George Thornton had observed the girl leave her seat in the gallery and approach the courtroom bar, yet neither deputy reacted to the girl. Deputy Gagel observed the girl getting Gallien's attention during the bench conference and presenting her with the stuffed animal. Deputy Gagel informed the court

---

[2] Appellant was being tried with a co-defendant. The co-defendant is not named in this matter as he was not a party to the original action in the Court of Appeals, nor is he a party in this appeal.

that he noticed that members of the jury panel took note of this event.

Deputy Thornton also testified during the court's investigation of this matter. Deputy Thornton testified that he was helping Deputy Gagel with courtroom security for this trial because the court had previously had problems with Gallien's family members distracting the proceedings. Deputy Thornton stated that he observed Deluka talking with his daughter and that Deluka was pointing upward. After this conversation, the girl walked to the courtroom's bar and ultimately gave the stuffed animal to Gallien. Deputy Thornton further testified that the girl's actions were not spontaneous, but were the direct result of Deluka's direction. In response to a question from defense counsel, Deputy Thornton stated that it appeared Gallien did not know that the girl was going to present her with a stuffed toy during trial.

After replaying the videotape and hearing testimony from Deluka, Deputy Gagel and Deputy Thornton, respondent issued the following statement from the bench:

"There have been difficulties during this week with some members of the gallery, for a better term, making audible comments, signs, things of that nature, body language, while we were presenting matters and many times typically when we've come to the bench, the deputies have reported they have had to advise these people to tone it down so to speak. This individual [Deluka] who was on the stand has been here from day one, he was in the box during when we were doing voir dire. We had a little difficulty with him because, while it was innocent in the sense that I guess he wanted to use the restroom while we were doing voir dire, during that time he left the jury box and went back into the secure area at a time after the secure area had been closed. There was no staff back there and he apparently just used the restroom, but was confronted at that point and told about the rules. And has been here, by the Court's observation, the deputies' observation, ever since. I'm extremely concerned as indicated because there have been issues raised in this case in opening statement about matters which the defendant has done good things for people and the Commonwealth has contended that's not the issue. The issue is whether or not she violated the law as it relates to prescriptions, and now we have this action which I do believe was not brought about as any plan of the defense team, but certainly has an effect on the jury since they clearly saw what went on. And I don't know if it was staged

3

by this member of the gallery. It certainly wasn't spontaneous since obviously his 10 year old child brought along a toy to a courtroom on a day when I would expect most 10 year old children to be in school and the jury totally saw that."

The Commonwealth then moved the circuit court to declare a mistrial on grounds that the actions undertaken by Deluka's daughter unduly prejudiced the Commonwealth. Gallien, by counsel, objected to the motion. The trial court granted the Commonwealth's motion for a mistrial over Gallien's objection.

After declaring a mistrial, Judge Conliffe ordered that Gallien be retried. Thereafter, the Commonwealth re-indicted Gallien, amending the original charges and adding new ones.[3] At or about the same time, Gallien sought a writ of prohibition from the Court of Appeals prohibiting Judge Conliffe from conducting a retrial because of double jeopardy concerns. The Court of Appeals held that Appellant did not have an adequate remedy on appeal, but that the trial court did not abuse its discretion in granting the mistrial.

"A writ of prohibition is an 'extraordinary remedy and we have always been cautious and conservative both in entertaining petitions for and in granting such relief."[4] Writ cases are divided into two classes, whereby a lower court is either acting without jurisdiction, or acting erroneously within its jurisdiction.[5] Although not specifically stated by Appellant, we assume that she contends the case at bar falls into the aforementioned latter class of cases. A writ of this type will not ordinarily be granted,

---

[3] A new indictment was returned against Gallien in March 2005 to correct errors in Counts 10 through 13 of the November 2003 indictment. The March 2005 indictment also added new charges of obtaining drugs by fraud or deceit as well as tampering with physical evidence.

[4] Grange Mutual Ins. Co. v. Trude, 151 S.W.3d 803, 808 (Ky. 2004) (quoting Bender v. Eaton, 343 S.W.2d 799, 800 (1961)).

[5] Id.

4

unless Appellant can show, as conditions precedent, that she "(a) had no adequate remedy by appeal or otherwise, *and* (b) would suffer great and irreparable injury (if error has been committed and relief denied)."[6] This Court has "consistently (apparently without exception) required the petitioner to pass the first test; i.e., he must show he has no adequate remedy by appeal or otherwise."[7] Appellant must then satisfy the requirements of the second test, by showing great and irreparable injury.[8]

We agree with the Court of Appeals, in that Appellant would have no adequate remedy by appeal, because if the trial court's decision to declare a mistrial is declared erroneous, double jeopardy would attach if Gallien were tried again. Furthermore, we have held that "double jeopardy is an appropriate subject for a writ of prohibition."[9] We find no error in this assessment.

We therefore will examine the Court of Appeals' analysis of the second prong of the test (great and irreparable injury), and we do so using a clear error review.[10] The trial court found that the stuffed animal incident, coupled with ongoing disruptions from the gallery, rose to the level of manifest necessity for a mistrial. "Whether to grant a mistrial is within the sound discretion of the trial court, and 'such a ruling will not be disturbed absent . . . an abuse of that discretion.'"[11] "A mistrial is an extreme remedy and should be resorted to only when there appears in the record a

---

[6] Id. (quoting Bender, 343 S.W.2d at 801) (emphasis in original).
[7] Bender, 343 S.W.2d at 801.
[8] Id.
[9] St. Clair v. Roark, 10 S.W.3d 482, 485 (Ky. 2000).
[10] Grange Mutual Ins. Co., 151 S.W.3d at 8-10.
[11] Bray v. Commonwealth, 177 S.W.3d 741, 752 (Ky. 2005) (quoting Woodard v. Commonwealth, 147 S.W.3d 63, 68 (Ky. 2004)).

manifest necessity for such action or an urgent or real necessity."[12] "The occurrence complained of must be of such character and magnitude that a litigant will be denied a fair and impartial trial and the prejudicial effect can be removed in no other way."[13]

The trial judge determined that the act of the girl giving the stuffed animal to Appellant, at her father's apparent direction, and in full view of the jury created an atmosphere in which the Commonwealth could no longer receive a fair trial. We also note that the trial judge determined that the cumulative effects of the disruptions from members of the gallery added to the necessity of declaring the mistrial. The disruptions were of such an apparent magnitude an extra deputy was brought in to assist in maintaining order during the trial. A trial court has the authority to grant a mistrial based on courtroom misconduct,[14] and were this not the rule spectators could influence juries without a trial court possessing the ability to remedy the situation. "The trial judge was in the best position to determine whether any remedial action was necessary to preserve decorum and ensure a fair trial."[15]

Appellant argues that the trial court had a duty to try and remedy the prejudice to the jury through other alternatives (e.g., an admonition or sanctions against the offending spectators), before a mistrial should have been granted. However, when a trial court clearly believes other alternatives will not remedy the prejudice, he has no duty to attempt such alternatives. In this case the trial judge believed any attempt to remedy the prejudice would have been futile.

---

[12] Id. (citing Skaggs v. Commonwealth, 694 S.W.2d 672, 678 (Ky. 1985)).
[13] Gould v. Charlton Co., 929 S.W.2d 734, 738 (Ky. 1996).
[14] See Raney v. Commonwealth, 287 Ky. 492, 153 S.W.2d 935 (Ky. 1941).
[15] Wilson v. Commonwealth, 836 S.W.2d 872, 890 (Ky. 1992).

The Court of Appeals did not abuse its discretion in denying the writ. Its opinion is affirmed.

Lambert, C.J., and Graves, Minton, Roach, Scott, and Wintersheimer, JJ., concur. McAnulty, J., dissents by separate opinion.

COUNSEL FOR APPELLANT:

Kevin C. Burke
125 South Seventh Street
Louisville, KY 40202

Steven R. Romines
ROMINES, WEIS & YOUNG, P.S.C.
600 West Main Street, Suite 100
Louisville, KY 40202


COUNSEL FOR APPELLEES:

Hon. F. Kenneth Conliffe
Judge, Jefferson Circuit Court
Hall of Justice
600 West Jefferson Street
Louisville, KY 40202

Gregory D. Stumbo
Attorney General of Kentucky
118 Capitol Building
Frankfort, KY 40601

Ruth E. Lerner
Jeanne Deborah Anderson
514 West Liberty Street
Louisville, KY 40202-2887

# Supreme Court of Kentucky

2005-SC-0792-MR

WRENDA B. GALLIEN                                                          APPELLANT

V.                                ON APPEAL FROM COURT OF APPEALS
                                              2005-CA-1148-MR

HON. F. KENNETH CONLIFFE, JUDGE,
JEFFERSON CIRCUIT COURT, ET AL                                    APPELLEE

## DISSENTING OPINION BY JUSTICE McANULTY

Respectfully, I dissent from the Majority's Opinion affirming the denial of the writ of prohibition. In my opinion, the trial court's decision to declare a mistrial after a girl presented a stuffed animal to Gallien during a bench conference in an otherwise calm courtroom was not manifestly necessary, especially in light of the court's stated belief that this presentation had nothing to do with the defense team. I believe the prejudicial effect, if any, of this gesture could have been removed by an admonition to the jury and/or a jury instruction and/or removal of the girl and her father from the audience. Such measures should have been sufficient to protect the substantial rights of the Commonwealth against the influence or cumulative influence of the bystanders. See Miller v. Commonwealth, 240 Ky. 346, 42 S.W.2d 518, 522 (Ky. 1931) (holding that trial court's act of sounding of gavel and statements (1) rebuking the audience for demonstration during the Commonwealth's closing argument, which included hollering, clapping hands and stamping feet that could be heard a distance of 300 to 400 feet

from the courthouse; (2) admonishing the audience that courtroom would be cleared if such behavior continued; and (3) admonishing the jury that such conduct had nothing to do with the trial were sufficient to protect the substantial rights of the defendant).

Under the circumstances of this case, I believe the trial court abused its discretion. As outlined above, the ends of substantial justice could have been achieved in a number of ways far short of declaring a mistrial. See Gosser v. Commonwealth, 31 S.W.3d 897, 906 (Ky. 2000).