## Meredith v. Commonwealth.

(Decided April 30, 1912.)

### Appeal from Bell Circuit Court.

1. Criminal Law—Homicide—Continuance—Absent Witnesses—Affidavit for Continuance.—On a trial for homicide, affidavit for

continuance on account of absent witnesses examined, and held to show diligence on the part of defendant in attempting to secure their attendance, and that as their testimony was material, the court erred in failing to permit the affidavit to be read as their deposition.

2. Same—Absence of Witness on Occasion to Which His Testimony Relates—Argument of Commonwealth's Attorney.—Where an affidavit for a continuance is read as the deposition of an absent witness, it is never proper for any attorney representing the Commonwealth to attempt to prove, or to argue, that the witness, if present in court, would not, as a matter of fact, so testify; but it is not improper for the Commonwealth to show, or for the attorney for the Commonwealth to comment on the fact, that the evidence shows that such witness was not present on the occasion to which his testimony relates.

3. Commonwealth's Attorney—Improper Argument.—While every man's innocence or guilt should be determined by the jury from the facts of the particular case, and no man should ever be convicted or made to suffer a severer punishment merely because of the prevalence of crime in the community, it has always been considered as within the limits of legitimate argument to insist on the jury doing its duty for the purpose of preventing bloodshed and crime.

J. G. ROLLINS and E. N. INGRAM for appellant.

JAMES GARNETT, Attorney General and D. O. MYATT for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Appellant, Hugh Meredith, shot and killed Andrew Saylor. He was tried and convicted of voluntary manslaughter, and given an indeterminate sentence in the penitentiary of from two to twenty-one years.

The homicide occurred under the following circumstances: On the last Sunday in September, 1911, the "Association," a religious organization, was conducting services at a church on Red Bird Creek, in Bell County, Ky. The church was near the home of Mrs. Link Lawson, the mother of appellant. Appellant and his family had gone to the home of his mother to spend the day. He remained there with his children while his wife, mother and sister, and the other members of his family went to church. After the services were over, the Lawson family, Mrs. Meredith and other neighbors went to the home of Link Lawson, where they had dinner. Some time later, the deceased, Andrew Saylor, his

father, Sim Saylor, Silas Slusher and Zack Belcher
started for the home of Link Lawson. Deceased in-
tended to go home with his father, and while en route
stopped at his own home and secured a 32 Winchester
rifle. At the time he also had a pistol in his pocket. He
then got on a horse behind his father, while Belcher got
on a horse with Slusher, and the four proceeded to the
home of Link Lawson. Silas Slusher and the two Say-
lors had been drinking to a considerable extent. When
they reached the house, the father, Sim Saylor, had to be
assisted from his horse. Appellant was there when they
came up, but nothing was said or done to indicate that
trouble was to be apprehended. When the four arrived,
dinner was over, but appellant's mother, Mrs. Lawson,
went out and prepared dinner for them. Belcher did
not go out to dinner. The two Saylors and Slusher did.
The three took seats; Sim Saylor and Andrew Saylor
on the same side of the table, and Slusher at the foot of
the table in front of the outside kitchen door. Mrs.
Lawson served the dinner, but the two Saylors seem to
have had some difficulty in eating. At this point there
is a wide variance between the testimony of the wit-
nesses for the Commonwealth and that of appellant's
witnesses.

The evidence for the Commonwealth is to the effect
that the first indication of trouble was when Slusher
began to swear and jerk the table up and down, and be-
gan to boast of the fact that he was the "worst
G—d d—n man who ever seen Red Bird." There-
upon, appellant, who was outside, came to the
door and asked what was the matter. Slusher
cursed him and threatened to kill him. There-
upon, appellant and Slusher went out of the house.
This difficulty seems to have been adjusted in some way.
Appellant then returned to the kitchen, pulled his pistol,
a forty-five, and shot and killed Andrew Saylor. He
fired three times. One of the bullits also struck Sim Say-
lor on the arm. All this time the deceased sat with
his Winchester across his lap and had his hand on the
hammer. In rising from his chair during the difficulty,
his gun was discharged into the floor. One of appel-
lant's shots struck deceased near the left nipple, while
the other took effect in his abdomen. One witness, who
admits that he was unfriendly towards appellant, testi-
fied as to some threats made by appellant with refer-
ence to the deceased quite a while before the difficulty.

According to the evidence for appellant, the deceased when he secured the Winchester rifle, remarked that he was going to kill appellant. No difficulty at all occurred between Slusher, who was appellant's brother-in-law, and appellant. The first indication of trouble was when deceased said: "Some G—d d—n person has lied on me and caused me to lose my job." Slusher endeavored to quiet deceased, but his efforts in that direction were of no avail. After making several ugly remarks in the presence of the ladies and children, the deceased fired his gun into the floor. Mrs. Lawson screamed and ran out of the room. Appellant, who was near the front porch on the outside of the house, heard his mother scream and the gun fired. He then ran through the family room into the kitchen and inquired as to the cause of the trouble. Seeing deceased with a smoking gun in his hands, he told the deceased not to shoot any more; that he might kill a child. Thereupon, deceased said: "G—d d—n you. I will kill you," and drew his gun on appellant. At the same time appellant drew his pistol. The deceased fired at appellant, missing him; whereupon, appellant fired at deceased.

Zack Belcher, who was present with Silas Slusher and deceased, denies that deceased stated when he got the rifle that he intended to go to the house to kill Hugh Meredith.

Before trial, appellant filed his affidavit for a continuance, based on the absence of Mollie Sulsher, Mary Lawson, Lucy Lawson, Will Bailey, Rose Brock, Alice Bingham and Jesse Saylor. The statements in the affidavit as to what Mollie Slusher and Alice Bingham would testify to were permitted to be read as their depositions. The affidavit did not state what Rose Brock would testify to, so the affidavit was insufficient as to her. A demurrer was sustained to those portions of the affidavit containing the evidence that Mary Lawson, Lucy Lawson, Will Bailey, Jesse Saylor, and Fanny Slusher would give, if present, and the court declined to permit the statements contained in the affidavit to go to the jury as the evidence of these witnesses.

The affidavit contains the following statements with reference to these five witnesses:

"He says that the last term of this court he caused to be issued and placed in the hands of the sheriff of Leslie County, Ky., the home county of witness a warrant of arrest for Mary Lawson, that same has been re-

turned by said officer, not executed that she is absent and if said witness was present in court, and sworn as witness, would truthfully state that about thirty minutes before Andrew Saylor was killed, and within one-half mile of the place where it took place, she heard the deceased, Andrew Saylor say, as he was going in the direction of the house where he was killed, that "I am going up the creek and kill Hugh Meredith." That Lucy Lawson and Bill Bailey were present and heard the same statements as above set out; that said witnesses are not present in court, on to-day, and that he can not safely go to trial without the benefit, of this testimony; that he has no other witness present by whom he can prove said statements; that this testimony is material to his defense; that each of said witnesses are within the jurisdiction of this court, and as he is informed and believes in the county of Leslie, State of Kentucky, that Lucy Lawson, was recognized at last term of court, to appear here on today. He says that they are not absent by his procurement, knowledge or consent.

"He states that at the last term of the court he caused to be issued a warrant of arrest for Jesse Saylor, who was at that time in Leslie County, Kentucky, and placed said process in the hands of the sheriff of Leslie County to do execution thereof; that the said process has been returned, "Not found in Leslie County, Ky. Jesse Saylor lives in Knox County, Ky." That he did not have any information that said witness had changed his location from Leslie County to Knox County until he received said return on today; that said witness if present in court and swore would truthfully state, that on the same day Andrew Saylor was killed he was with witness, Jesse Saylor, and that the deceased asked witness to go with him to Link Lawson's and said that Hugh Meredith was there at Lawson's, and that he, the deceased was going up there, and they would have it out, and that it would be ended up there; that at this time he was armed with a pistol; that this on or near the place where they had preached on Red Bird on that Sunday, and about two hours before said deceased was killed. He says that he can not safely go to trial without the presence of said witnesses; that there is no other witness present by whom he can prove said statements; that same will be true when proven; that he can procure the attendance of the said witness at the next term of this court."

The affidavit concludes with the following statement:

"That Fanny Slusher will state that both Henry and Chas. Saylor told her they knew nothing of the shooting. That a subpoena has been issued and placed in hands of sheriff, for her appearance on today; that he does not know that it has been served; that her testimony is material to this defendant.

"He says that none of said witnesses are absent by his procurement, knowledge or consent; that they all reside within the jurisdiction of the court; that he does not make this motion for delay but that in order that justice may be done and that he obtain and fair trial."

It appears that at the November term of court, when the case was called for trial, appellant was granted a continuance on account of the absence of the same witnesses, because the Commonwealth declined to admit as true or consent that the affidavit then filed might be read as testimony of the witnesses. At the same term a warrant of arrest was issued to Bell County for Jesse Saylor, Rosa Brock, Mary Lawson and Will Bailey. Another warrant of arrest was issued to Leslie County for the same witnesses.

As the affidavit simply states that Lucy Lawson and Will Bailey were present and heard the deceased make the statement that it is claimed that Mary Lawson heard and would testify to, and does not state that Lucy Lawson and Bill Bailey would so testify, the affidavit as to them is insufficient. The affidavit is likewise insufficient as to Fanny Slusher, because it does not state when process was issued for her or placed in the hands of the sheriff for service. We think the affidavit was sufficient as to Mary Lawson and Jesse Saylor. Therefore, the court should have permitted the affidavit to be read as their deposition. In view of the fact that one witness for appellant stated that deceased said that he was going up the creek to kill appellee, while this statement was denied by a witness for the Commonwealth who was present when it is claimed the statement was made, the evidence of Mary Lawson and Jesse Saylor was important and material. It was competent as showing deceased's state of mind, and therefore had a direct bearing upon the question of who was the aggressor, which is the controlling issue in the case. Had the evidence of Mary Lawson and Jesse Saylor been before the jury, the jury might have acquitted appellant. We there-

fore conclude that the exclusion of their evidence was prejudicial error.

The bill of exceptions discloses that the Commonwealth's Attorney, in his closing argument to the jury, made the following statement:

"Gentlemen of the jury, it is stated in the affidavit of the defendant that Mollie Slusher would swear (giving substance of statements of affidavit), which is admitted as her testimony. But we have shown by certain witnesses (naming them) that she was not there."

This statement was objected to by counsel for appellant. We have repeatedly held that where an affidavit for a continuance is read as the deposition of an absent witness, it is never proper for any attorney representing the Commonwealth to attempt to prove, or to argue, that the witness, if present in court, would not, as a matter of fact, so testify. But this rule does not make it improper for the Commonwealth to show, or for the attorney for the Commonwealth to comment on the fact, that the evidence shows that such witness was not present on the occasion to wich his testimony relates.

It is also insisted that the Commonwealth's Attorney was guilty of improper conduct in using the following language:

"Gentlemen, will you do your duty? Juries of Bell county are waking up and returning verdicts of the highest penalty known to the law, and this alone will stop bloodshed and crime in old Bell county."

While, of course, every man's innocence or guilt should be determined by the jury from the facts of the particular case, and no man should ever be convicted or made to suffer a severer punishment merely because of the prevalence of crime in the community, yet it has always been considered as within the limits of legitimate argument to insist on the jury doing its duty, for the purpose of preventing bloodshed and crime. The language referred to goes no further than this, and we cannot say that the argument is an improper one.

We deem it unnecessary to set out the instructions. It is sufficient to say that they properly presented the law of the case.

Judgment reversed and cause remanded for a new trial consistent with this opinion.