## Johnson v. Commonwealth.

(Decided Jan. 10, 1933.)

JOHN W. CAUDILL and OSCAR P. BOND for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

This is an appeal from a judgment convicting appellant of manslaughter, and fixing his punishment at five years' imprisonment.

Appellant lived on the head of Left Beaver in Floyd county. About noon on April 28, 1932, he shot and killed his daughter, Tina Smith. Several months before, Tina, who had killed her husband, was convicted of manslaughter, and recently the judgment had been affirmed. Smith v. Commonwealth, 241 Ky. 842, 45 S. W. (2d) 490. Shortly before the homicide she and her father had gotten into a scuffle, and she jerked him over a slop jar, or banister, and broke some of his ribs. On the morning of the homicide appellant was in bed at his home, and several persons had called to see him. About noon Tina Smith and her brother, Eli Johnson, appeared. There had been some feeling between appellant's wife, who was called "Squirrel," and his children by his first wife. When Tina and Eli arrived Mrs. Johnson and Eli indulged in some ugly talk. About that time the other visitors left, Mrs. Owens, appellant's daughter, claiming that she went for the officers to protect her father. Because of his resentment at the remarks made by his stepmother, Eli threw a rock into the house. According to appellant, Tina then came into the room with a rock in one hand and a hand axe in the other. She threw the rock at him and then changed the axe to the other hand and advanced on him. In the meantime he had gotten his pistol, and believing that she was going to kill him he shot her. Afterward he kicked the hand axe out of the way. The house got burned, and some one picked up the axe. According to Mrs. Susan Owens, appellant's daughter, Eli was trying to get Tina to go in on her father when she left. Emma Adams, appellant's stepdaughter, was lying on a bed when Tina Smith came into the room. She heard Eli tell Tina they would go in and take the pistol and kill them. Tina then came through the door with a hatchet and rock in her hand. Appellant was then lying on the bed. Appellant shoved her back and came through the door. Tina threw a rock at appellant. Then she took the hatchet in her other hand and came toward him. Appellant then shot. On the other hand, the commonwealth proved by several witnesses, who arrived on the scene shortly after the homicide, that they did not see a rock or an axe in the room. It was further shown

that Tina had been shot three times, and that in one place her dress had been powder burned. There was also evidence by a neighbor that he had a conversation with appellant a few days before the trouble in which he spoke of the racket he had had with Tina, and stated in substance that, "if it had not been for Squirrel and them taking the gun from him, he would have killed Tina."

It is insisted that as other witnesses testified as to the hostile attitude of Tina Smith and her brother Eli, and appellant, and his stepdaughter, Emma Adams, who were the only eyewitnesses of the killing, stated that Tina was advancing on appellant with an axe at the time he shot, the evidence was not sufficient to take the case to the jury, or to sustain the verdict. It must not be overlooked that the credibility of the witnesses is always a question for the jury, and that the jury is not required to accept as true the evidence of the accused and his witnesses, particularly where there are circumstances or other evidence tending to disprove what they said. Though both appellant and his stepdaughter say that Tina Smith attacked appellant with a rock and an axe, other witnesses, who appeared on the scene shortly after the homicide, did not see any rock or axe in the room, and appellant accounts for the disappearance of the axe by saying that he kicked the axe out of the way. In addition to this, there was evidence that appellant was incensed against Tina because of her previous conduct and assault upon him, and that he stated that if it had not been for his wife and others he would have killed Tina at the time of the previous assault. In the circumstances it was for the jury to say whether or not appellant acted in defense of himself or the other members of the family, and it cannot be said that the verdict finding him guilty of manslaughter is flagrantly against the evidence.

There is the further contention that the commonwealth's attorney was guilty of misconduct in his argument to the jury.

In the first place, it is insisted that he went outside the record when he stated to the jury that Emma Adams said that Eli said, "You had better get the pistol from the old man or he will kill the whole push, or the last one of us." The transcript of the evidence

discloses that on her cross-examination Emma Adams testified without objection as follows:

"Q. You say you heard him say to Tina, 'Go in there and take the pistol from the old man; he will kill every one of us?' A. Yes, sir."

It is at once apparent that the commonwealth attorney's statement of Emma Adams' testimony was substantially correct, and that in making the statement he did not go outside the record.

In the next place, it is insisted that the commonwealth's attorney went outside the record and made an improper argument when he stated to the jury that Willie Johnson came after the killing, and that appellant did not point out the hatchet to him, or any one else, and did not tell him anything about it. The claim is that the statement was unsupported by the record in view of the fact that Willie Johnson did not testify. That is true, but appellant testified, and did not say that he pointed out the hatchet to Willie Johnson or any one else. On the contrary, he said that he kicked the hatchet out of the way. Clearly the situation was one where the natural thing for appellant to have done would have been to leave the hatchet or axe where it was, and call the attention of Willie Johnson and the others, who arrived shortly after the homicide, to its presence. As appellant failed to do this, there can be no doubt that the reference to such failure was within the range of legitimate argument.

Complaint is also made of the following statement of the commonwealth's attorney:

"Coming to the case, it is a bad case; that's all there is to it. Maybe you will say that he is an old man and you ought to take pity on him; it is his own folks. I don't know anything about what you think about that, but I know his own folks didn't give me much help in this prosecution; they didn't give me much assistance. Turn him loose or give him a small sentence. I know that up in that section of the country we need some sentences —probably needed in his family—probably it would help the other members of his family to enforce the law."

It is insisted the argument was prejudicial in view of the fact that it developed on the trial that other mem-

bers of appellant's family had been tried for offenses, and that the argument as a whole was an appeal to the jury to convict appellant because he lived in a community where sentences were needed. While it may be that the reference to appellant's family is subject to criticism, it is clear that the argument as a whole merely stressed the prevalence of crime in the community, and the necessity for enforcing the law, and therefore was not prejudicial. Calico v. Commonwealth, 145 Ky. 641, 140 S. W. 1036; Shepherd v. Commonwealth, 230 Ky. 611, 20 S. W. (2d) 466; Meredith v. Commonwealth, 148 Ky. 106, 146 S. W. 407.

Judgment affirmed.