## Mullins v. Commonwealth.

(Decided Jan. 13, 1933.)

JOHN W. CAUDILL and OSCAR P. BOND for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellant, Hilbert Mullins, has been convicted of the crime of manslaughter and sentenced to a term of nine years in the penitentiary. It is argued that the judgment should be reversed because (1) the verdict is flagrantly against the evidence, and (2) incompetent evidence was admitted to the prejudice of appellant's substantial rights.

Appellant shot and killed George Adams in the home of Mrs. Bob Taylor. A number of persons were at the Taylor home and witnessed all, or a portion, of the altercation leading up to the shooting. George Adams and his brother, Joda Adams, went to the Taylor home about 4 o'clock in the afternoon of November 15, 1931, and found appellant lying on a bed in one of the front rooms. According to the weight of the evidence the Adams brothers, and especially Joda Adams, were drunk. Joda Adams testified that, when he and his brother entered the room, appellant was lying on a bed with a pistol in his hand; that he arose, announced he was the worst man in the house, and ordered Joda Adams to play the victrola, at the same time punching him with the pistol. The deceased told him not to shoot his brother and thereupon appellant pointed the pistol at Aggie Hall and a little girl who were in the room and ordered them to leave which they did. He then turned and shot George Adams, the bullet entering his forehead just above the left eye. Joda Adams grappled with appellant and threw him to the floor and called Mrs. Taylor and asked her to take the pistol out of his hand which she did.

Appellant testified that he was lying on the bed but had no pistol in his hand when the Adams brothers entered the room. They were drunk and boisterous and to avoid trouble he attempted to leave the room. Joda Adams struck him with his fist and knocked him down and then got on him and began beating him. George Adams walked toward him saying he was going to kill him when he drew his pistol and fired two or three

shots. He is corroborated by two or three witnesses who were present. Joda Adams admitted that he had been convicted of a felony and had served a term in the penitentiary, and it is argued that his testimony should be disregarded, and that, without it, there is no testimony to sustain the verdict.

The fact that the prosecuting witness had been convicted of a felony only affected his credibility as a witness and whether or not his version of the affair was true was for the jury to determine. We have frequently held that it is the province of the jury to pass upon the weight and sufficiency of the evidence and the credibility of the witnesses and that they may accept the testimony of one witness or set of witnesses. Hudson v. Commonwealth, 227 Ky. 831, 14 S. W. (2d) 146; Morgan v. Commonwealth, 222 Ky. 742, 2 S. W. (2d) 370; Price v. Commonwealth, 221 Ky. 162, 298 S. W. 383; Fairchild v. Commonwealth, 208 Ky. 531, 271 S. W. 584; Mattingly v. Commonwealth, 199 Ky. 724, 251 S. W. 953.

Counsel for appellant assumes in his brief that there is no testimony tending to corroborate Joda Adams, but this assumption is incorrect. Anna Adams, who was present, testified that, after the Adams brothers went into the room, appellant rose from the bed with his gun and told Joda Adams to play the victrola; that as she left one of the Adams brothers said, "Put your gun up, you will shoot yourself or someone," and he said he would take care of the gun and would not hurt himself. Ettie Adams was at the Taylor home a short time before the Adams brothers arrived. A few days before this she heard appellant say that George Adams owed him $6.00 and that he intended to have it if he had to take somebody's life. Just before the killing occurred some one announced that Adams was coming and appellant said, "Let him come, we will take care of him." At the same time he pulled his pistol out of his pocket, looked at it, and put it back. Appellant denied that he made any of these statements, but in view of the conflict in the evidence the truth of the matter was a question for the jury to determine. A careful reading of the record convinces us that there was sufficient evidence to sustain the verdict.

Aggie Hall was introduced as a witness for the appellant, and, on cross-examination, she was asked if

she did not make certain statements when she testified before the grand jury. Vivian Hamilton was introduced as a witness in rebuttal by the commonwealth. She had taken down in shorthand the testimony heard by the grand jury and later had transcribed it. She was shown the transcript of the testimony that had been made by her and was asked if Aggie Hall did not make certain statements when she testified before the grand jury and the witness answered in the affirmative. It is insisted that this testimony was incompetent on the ground that the witness was permitted to read the answers made by Aggie Hall when a witness before the grand jury. The minutes of the grand jury which had been taken down in shorthand and transcribed by the witness were used merely as memoranda to refresh her recollection and for that purpose their use was permissible. Even if the memoranda had not been properly used, no prejudicial error would have resulted, since the matters inquired about were of an inconsequential nature and could not have influenced the jury in reaching its verdict.

Finding no error prejudicial to appellant's substantial rights, the judgment is affirmed.