## Wireman v. Commonwealth.

(Decided Feb. 19, 1937.)

W. R. PRATER and H. H. RAMEY for appellant.

B. M. VINCENT, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming.

On January 22, 1929, the grand jury of Magoffin county returned a true bill charging that appellant had committed the crime of murder by willfully and feloniously shooting, wounding, and killing one Kelly Allen. For reasons, which will later appear, appellant was not brought to trial on the indictment until April

27, 1936, at which time, after a hearing of testimony and instructions by the court not subjected to criticism, the jury returned a verdict finding appellant guilty of the lesser offense, voluntarily manslaughter, fixing his punishment at confinement in the penitentiary for a period of fifteen years. Motion for new trial was overruled; judgment entered according to the verdict, and this appeal is now prosecuted.

Kelly and Homer Allen were living with their mother and father about seven miles from the store of Elliott Wireman, near the place where the homicide occurred. The date of the homicide was October 27, 1928, and the two brothers left home on that date with the expressed intention of going to Wireman's store "up on Trace creek," and from the evidence both were apparently sober when they left their home. It was shown that neither of them owned or had a pistol.

There were no eyewitnesses to the homicide except appellant and his brother Elliott. Witnesses who lived in the neighborhood had seen deceased and his brother Homer at Wireman's store. Appellant and his brother were drinking moonshine whisky, and it is shown that all the parties except deceased were more or less under its influence.

The two brothers left their home riding on a pony. They passed Carew Miller's house and went on to the store. Later they went back to Miller's where a house was being built and assisted to some extent in the work. They remained there until noon and perhaps some time thereafter. In the meantime appellant and his brother went up to the Miller place, where they remained some time. Then they went "back home," the Allen boys accompanying them. Later in the afternoon appellant went to his brother Elliott's barn. His brother Elliott and the two Allen boys were there. After some time several shots were heard, and witnesses going to the barn found both the Allen brothers dead, Kelly having two bullet wounds in the head; the description of the wounds causing Homer's death not appearing in this record. The examining physician testified that the wounds on each of the bodies showed that they were caused by a large caliber pistol, larger than a .38 and both made by a large size gun.

Flora Wireman, divorced wife of appellant, had

seen the Allen brothers at Wireman's store on the day of the homicide, and around the barn just before the shooting. They were riding the pony, "taking time about." She says that when they went to the barn she later saw appellant walking, carrying a pistol. This witness had seen all the parties drinking prior to the shooting. After the killing, she saw the Wireman brothers at or near the barn where the killing occurred. She said, "Elliott had his arm around Jake's neck; every time Jake would go to speak Elliott would draw his hand back and said if he spoke he would 'slap hell out of him.' Afterwards Elliott put appellant in a stall in the barn and fastened him up. Elliott had the gun Jake had killed the boys with and was trying to get the hulls out of it."

Lizzie Wireman says that shortly after the episode at the barn, appellant came to her home and told her that he had killed the Allen boys. She said, "I reckon not Jake," and he says, "Yes, I did." She said she thought he said, "I had to kill them." This testimony was not challenged in any manner.

Appellant testifies that he first saw the Allen boys up at the point where Carew Miller was building a house, about one-fourth of a mile below where he lived. He went down there about noon with his brother Elliott. He says he was perfectly sober. He also states that he was not acquainted with the Allen brothers, and had never had trouble with them prior to this time. After he and Elliott arrived, Homer Allen produced some liquor. Appellant says he refused to drink, but that Elliott took some. After some drinking, he, Elliott, and the Allen boys went back to his or Elliott's home, appellant and Elliott walking, the Allens riding their pony. They then went to Elliott's store, and the Allen boys said they wanted to look at some shoes and rubbers. Homer produced the liquor again and the boys and Elliott drank. They remained in the store until about 4 o'clock. Appellant in the meantime went home and took a nap. After he awoke, he went to the barn. Prior to this time, and while the boys were at the store, Homer had asked appellant to stand credit for a sack of sugar, and appellant refused and Homer seemed to be "peeved" at his refusal, or rather at Elliott's refusal to extend him credit.

When appellant went to the barn as he says to feed some stock, he found the Allen boys there. He fed the stock, came back to the entrance of the barn, and started to the house. Homer asked him to wait a minute and asked him if he was "going to stand good for that sugar." Appellant again refused and Homer said, "You G. D. cheap son-of-a-bitch, I don't see why you fellows can't do that. I said, 'You don't want to feel that way,' and brother Elliott spoke up and said, 'You boys stop.' and I heard Kelly say, 'I will stop it and stop it right now,' and Elliott spoke again and said, 'Look out Jake,' and then I looked and Kelly pulled his pistol and had it pulled on me and he fired and I fired. When I wheeled back Homer picked up a rock, I started to run to the house and I fell and he threw the rock over me. Appellant then got back to his feet and fired at Homer and he fell. He then went back to the barn, picked up Kelly's gun, and left the scene, went to Virginia and then to New York, because "there was strong families on both sides, and I was afraid of more trouble." He came back to Magoffin county in 1935 and gave himself up to the officers.

Appellant says he shot Kelly Allen because, "I thought he was going to kill me," and took Kelly Allen's pistol to protect himself because, "I did not have any more shells for my gun." The appellant did not produce, as far as the record discloses, the pistol which he claimed belonged to Kelly. For some reason not disclosed, Elliott Wireman did not testify. A witness for defendant testifies that the night after the killing appellant came to Lizzie Wireman's house, "got some cold victuals, smoked a cigarette and told me he killed the two boys; he said he killed the first one—didn't say which one he killed first, but said when he killed the second one he threw his head around. He said he had to do it."

It is quite clear from the record that appellant was first tried for the murder of Homer Allen, found guilty and sentenced to two years confinement in the penitentiary, serving a portion of that period before being released by some extension of clemency. While there, as several of his fellow inmates testify, he made certain statements as follows:

Linville Allen says that some time in 1935 appel-

lant said to him, in the presence of Lonzie Cole and Monroe Arnett, that he had killed the boys with a .45 Derringer. He said he had killed them over whisky and "would not have killed Homer, but wanted to get him out of the way. He said the boys were 'pushing up the daisies now.'"

Monroe Arnett said, "There was a bunch of us standing around there talking, and he said he would not have killed Kelley Allen, but had to do so to keep him from being a witness against him."

Lonzie Cole heard appellant say he "wouldn't have killed that last boy if it wasn't for him making a witness against him." No objection was interposed to this testimony, perhaps for obvious reasons.

We shall take up the grounds for reversal in the order in which the same are presented in argument. It is first urged that the court erred in admitting the testimony of the three last above witnesses, because they testified to a statement made by appellant to them, or in their presence, while all were inmates of the state reformatory, and mainly because this was not a statement "relating to or being an explanation as to how or why he killed Kelly Allen, for which he was on trial."

It will be noted that appellant does not challenge the competency of the evidence adduced from the fellow prisoners, but says that it was not relevant. The evidence was competent and relevant. Formerly the testimony of a person convicted of felony "anywhere in the United States" was incompetent, unless pardon had been granted. 2 Rev. Stats. c. 107, sec. 5, but that statute was repealed by the general statutes, which only placed the blight upon persons convicted of perjury, false swearing, or subornation of perjury. Com. v. McGuire, 84 Ky. 57. This seems to be the existing law. Ky. Stats. sec. 1180. Roberson v. Woodfork, 155 Ky. 206, 159 S. W. 793. As the law now stands announced, testimony of a witness who has been convicted of a felony (other than above stated) is subjected for that reason, only to criticism as to his credibility. Mullins v. Com., 246 Ky. 748, 56 S. W. (2d) 370.

In the instant case, appellant waived any objection to the competency or relevancy of the testimony of the

witnesses, or the credibility of the witness by his failure to object and save exception if the ruling were adverse. The objection that it did not amount to a statement relating to or explaining how or why appellant killed Kelly Allen is not well taken, particularly with reference to the testimony of two of the witnesses.

Lonzie Cole says that appellant said he killed Homer first and then shot Kelly because of his fear of Kelly's testimony against him. Linville Allen said "he would not have killed Homer but he wanted to get him out of the way." Arnett said that appellant stated, "He wouldn't have had to kill Kelly but he killed him to keep him from being a witness against him." It is clear from these statements, coupled with the statement of appellant, that he shot both with a Derringer and killed Homer "over some whisky," manifested his notion, at least, of why and how he killed them.

The testimony complained of was competent and relevant as substantive evidence. We had before us a similar contention in Taylor v. Com., 256 Ky. 667, 76 S. W. (2d) 923, 925, in which we held that any statement in the form of a confession or admission made by the defendant on trial is provable as substantive testimony, without the laying of a foundation by first asking the defendant concerning it. It was said:

> "We have so held continuously without any opinion to the contrary, and from which it results that the argument against the criticized testimony is likewise unfounded."

See Allen v. Com., 176 Ky. 475, 196 S. W. 160; Stacy v. Com., 97 S. W. 39, 29 Ky. Law Rep. 1242; Berry v. Com., 227 Ky. 528, 13 S. W. (2d) 521.

The second contention urged for a reversal of the judgment is that the commonwealth's attorney in his closing argument to the jury made "irrelevant, inflammatory and prejudicial statements, and that same so prejudiced the jury as that appellant was not accorded a fair and impartial trial." The remarks of the attorney, about which complaint is made, are as follows:

> "You can not acquit this man without violating the oath you took when you were accepted as jurors.

"No, doubt, we could have gone to the penitentiary and brought from seventy-five to one hundred men from down there who would testify to the same things that those other witnesses testified to who were brought here from the penitentiary."

"The defendant said he failed to prove him guilty, but gentlemen, twelve men who sat where you sit said he was guilty and they sent him to the penitentiary, and that proved he was guilty. Jake Wireman was convicted here at a former trial of this court for killing Homer Allen and went to the penitentiary, and only served from May until he was pardoned and came back to this county."

The commonwealth's attorney filed a response in which he denied using the language and therein gave his version which modified to some extent the language attributed to him as exemplified in the bill of exceptions. We are precluded from considering this response since under decisions of this court we are to be advised alone by the properly signed bill of exceptions. Hopkins v. Com., 210 Ky. 378, 275 S. W. 881; Berry v. Com., 227 Ky. 528, 13 S. W. (2d) 521.

In support of his contention that the judgment should be reversed because of prejudicial remarks by the commonwealth's attorney, appellant relies on the case of Goff v. Com., 241 Ky. 428, 44 S. W. (2d) 306, which was reversed because of argument made. The language quoted in the Goff Case was violent to such an extent as to cause the court to conclude at first blush that its tendency was to bias and prejudice the jury, causing them, perhaps, to momentarily forget their sworn duty. Again statements were made which were entirely unsupported by the evidence. By comparison the language quoted above is mild; free from the use of words or expressions which would be calculated to inflame the minds of the jury, or to create a condition of bias or prejudice against appellant. In so far as they or any of them relate to facts, it is easily discernible that such were to some extent borne out by the proof. Twelve men had said that defenadnt was guilty in the Homer Allen trial, and he had gone to the penitentiary and remained there "from May until the 15th of September 1935," according to appellant's testimony.

Such other remarks as were objected to could not in any sense be considered as statements of fact. They were at the most expressions of opinion or judgment on the part of the prosecuting officer.

We have repeatedly written that "under the prevailing and recognized rule of practice, much latitude is allowed an attorney in the argument of his case, and it is only when it clearly appears that he has gone outside the facts necessary to constitute the defendant's guilt and has sought thereby to take an undue advantage of the accused, that this court is justified in interfering on account thereof." Miller v. Com., 240 Ky. 346, 42 S. W. (2d) 518, 522. See and compare also, Lee v. Com., 142 Ky. 742, 135 S. W. 315; Meredith v. Com., 148 Ky. 106, 146 S. W. 407; Clark v. Com., 209 Ky. 51, 272 S. W. 11; Lee v. Com., 262 Ky. 15, 89 S. W. (2d) 316; Drake v. Com., 263 Ky. 107, 91 S. W. (2d) 1009.

The defendant put his defense squarely before the jury. He admitted the killing, but said it was done in self-defense. The court by proper instructions also put the issues fairly to the jury. There was sufficient evidence to justify the jury in concluding the homicide was not in self-defense. Under this state of case we cannot take the place of the jury and determine the weight of the evidence or credibility of the witnesses. Frasure v. Com., 245 Ky. 127, 53 S. W. (2d) 204; Johnson v. Com., 246 Ky. 703, 56 S. W. (2d) 344. Compare Puckett v. Com., 242 Ky. 284, 46 S. W. (2d) 80; Fleming v. Com., 219 Ky. 697, 294 S. W. 153.

After a careful review of the record, we fail to find error which in any wise worked to the prejudice of appellant, and therefore affirm the judgment.