## Riley v. Commonwealth.

Nov. 28, 1944.

Jesse Morgan and Paul Gross for appellant.

Eldon S. Dummit, Attorney General, and M. J. Sternberg, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellant, Jerry Riley, has been convicted of the crime of murder, and his punishment fixed at imprisonment for life. He seeks a reversal of the judgment on the following grounds: (1) The indictment is defective, and the demurrer thereto should have been sustained; (2) the appellant's motion for a continuance should have been sustained; (3) the verdict is flagrantly against the evidence and a verdict of acquittal should have been directed; (4) incompetent evidence was admitted; and (5) the Commonwealth's attorney was guilty of misconduct in his argument to the jury.

The criticism of the indictment is directed not to its substance but to the alleged lack of the indorsement required by section 119 of the Criminal Code of Practice, which reads:

"The concurrence of (twelve) grand jurors is required to find an indictment; when so found it must be

indorsed 'a true bill,' and the indorsement signed by the foreman."

On page 1 of the record this appears:

"Came this day the Grand Jury of Perry County and into open court answered to the call of their names and through their foreman reported the following indictment against Jerry Riley, charging him with the crime of wilful murder. Said indictment was endorsed a true bill by the Foreman of the Grand jury and handed to the Clerk of this court, who marked same filed as the law directs."

The body of the indictment signed by the Commonwealth's attorney follows. On page 2 of the record is a copy of an indictment, with the blanks unfilled, followed by this:

"(Endorsed on back)

"No. 1178. Commonwealth of Kentucky Indictment for Vs. Wilful Murder, Jerry Riley. A true Bill, Coleman Daniel, Foreman of the Grand Jury.

"Presented by the foreman, in the presence of the Grand Jury, to this court and filed in open court, this 13 day of June, 1944.

"(Signed) Sam Combs, Clerk,
"Perry Circuit Court

"Bond, 7,500."

Then the names of a number of witnesses appear.

It seems that a blank form of indictment was attached to a typewritten indictment by means of staples or brads, and the indorsement, "a true bill," and the signature of the foreman of the grand jury appear on the back of the second sheet or blank form. It is contended that the indorsement and signature must be on the indictment itself and not on a sheet of paper attached to the indictment. We cannot believe that counsel is serious in making such a contention. Many courts, including this one, have been accused of indulging in hypertechnical criticisms of indictments in criminal cases, but no court within our knowledge has ever gone to the extreme contended for by counsel for appellant. It has been held that section 119 of the Criminal Code of Practice is mandatory, and the indictment must be indorsed a "true bill" and signed by the foreman, Davis v. Commonwealth, 279 Ky. 127, 129 S. W. 2d 1030, but

when the two sheets of paper were attached they constituted one instrument and the indorsement on the back of the second sheet was not only a substantial but a literal compliance with the Code provision.

The crime for which appellant was indicted and tried was committed on May 1, 1944. An examining trial was held on May 6, 1944, and he was represented by two attorneys who later represented him in his trial in the circuit court. The indictment was returned on June 13, 1944, and the case was set for trial on June 20, 1944, but later was set for trial on June 30. On that day appellant filed a motion for a continuance, supported by the affidavit of one of his attorneys, in which it was stated that the attorney was engaged in the trial of a local option contest case before a special judge; that he had not been able to prepare appellant's case for trial; and that his presence at the trial of the election contest case was necessary. The trial judge learned that the special judge would adjourn the trial of the election contest case on the afternoon of June 30 to the morning of July 5. He overruled appellant's motion for a continuance and reset the case for July 3. The trial was held and concluded on that day. There is no showing that a continuance would have been of any advantage to appellant or to his counsel in preparing his defense. He was represented by two competent attorneys, and they had ample opportunity to make preparations for the trial. It follows that the court did not err in overruling the motion for a continuance. Hatfield v. Commonwealth, 287 Ky. 467, 153 S. W. 2d 892; Taylor v. Commonwealth, 262 Ky. 126, 89 S. W. 2d 630; Perry v. Commonwealth, 200 Ky. 696, 255 S. W. 522.

The next ground relied upon for reversal of the judgment requires a brief statement of the facts. Appellant shot and killed Wilbur Chambers about 8:30 p. m., May 1, 1944, in the latter's home in the town of Hardburly in Perry county. Wilbur Chambers lived with his wife and 17-year-old son in an apartment in a house owned by Enos Combs. Jerry Riley, a coal miner, had been living in one of the rooms rented by Chambers and boarding with the Chambers family for several months before the killing. Orlena Fugate, who lived directly across the road from the house occupied by the Chambers family and Riley, testified that she heard a noise and then a gun fire in the Chambers house. The Chambers boy came through the door and fell on the

porch. His father and appellant carried him into the house. Soon thereafter Wilbur Chambers ran out of the kitchen onto the porch followed by appellant, who jerked him back into the house. She then heard two pistol shots and saw Wilbur Chambers run through the kitchen door onto the porch and down the steps. He fell in the street and was carried into the Fugate home, where he soon died. He had been shot through the neck. Several witnesses who were in the Fugate house or nearby testified to substantially the same facts. Enos Combs was sitting on the porch of the house where the Chambers family lived. He heard a pistol shot and saw Chambers come out of the house onto the porch. Appellant grabbed him and jerked him back into the house. The witness looked through the window and saw appellant step back, raise his pistol and shoot. Chambers had nothing in his hand at the time. John Vermillion testified that appellant, Wilbur Chambers, and the latter's wife were in his store about an hour before the shooting. Mrs. Chambers came into the store and told him that appellant wanted to see him. He went out and appellant asked him if he had any "pistol shells." He had none, and he later saw appellant and Mrs. Chambers leading Wilbur Chambers across the road to an automobile. Dr. L. M. Pearlman testified that about a week before the shooting Wilbur Chambers, Mrs. Chambers, the Chambers boy, and appellant were in his office in Hazard, Kentucky. Wilbur Chambers and the boy left, and Mrs. Chambers and appellant sought his advice on the domestic difficulties in the Chambers household. Mrs. Chambers, in the presence of appellant, told him that she was in love with appellant and wanted to leave her husband. They hugged and kissed each other in his presence. Dr. B. G. Hamm testified that his office and the office of Dr. Pearlman were in the same building. Two, three or four weeks before the killing he was in Dr. Pearlman's office and saw appellant, Wilbur Chambers, Mrs. Chambers and the Chambers boy. On that occasion appellant endeavored to purchase a pistol from Dr. Hamm. Appellant testified that Chambers attacked him with a knife, and that he shot him in self-defense. From the foregoing statement of the substance of the evidence, it is obvious that appellant was not entitled to a directed verdict in his favor.

It is next insisted that the testimony of Drs. Pearlman and Hamm was incompetent and highly prejudicial.

Certainly, the testimony of Dr. Pearlman was competent and material as bearing on the motive of appellant. Taylor v. Commonwealth, 266 Ky. 325, 98 S. W. 2d 928. Aside from this, however, appellant cannot avail himself of the alleged errors since he failed to preserve his right to have this court review them. He objected to some of the testimony of Dr. Pearlman and Dr. Hamm but never took an exception, and the bill of exceptions fails to show that an exception was taken. In his motion and grounds for a new trial he stated that he objected to the testimony of the two doctors, that his objections were overruled, and that he excepted. The motion and grounds for a new trial was copied in the bill of exceptions. The trial judge examined, approved, and signed the bill of exceptions, but by this he did not certify that exceptions were taken to the rulings of the court on the admission of the testimony of the two doctors; he merely certified that the motion and grounds for a new trial contained a statement to that effect. Since no exceptions were taken, the alleged errors cannot be reviewed by this court. Smith v. Commonwealth, 283 Ky. 492, 141 S. W. 2d 881; Wireman v. Commonwealth, 267 Ky. 304, 102 S. W. 2d 34.

Appellant complains of two statements which he claims the Commonwealth's attorney made in his argument to the jury: (1) That the killing of Wilbur Chambers was planned by Mrs. Chambers and appellant; and (2) that appellant had been convicted of a felony, had been in the penitentiary, and this was the second man. The first statement was a logical deduction from the evidence, and the argument in this respect was not improper. Hale v. Commonwealth, 255 Ky. 167, 73 S. W. 2d 34. The second statement would have been prejudicial if made as claimed by appellant. It appears only in the motion and grounds for a new trial, which was copied in the bill of exceptions, which failed to state that such an argument was made or, if made, that it was objected to or an exception saved. The Commonwealth's attorney, in response to the motion and grounds for a new trial, filed an affidavit in which he denied making the statement attributed to him, but admitted stating in his argument that appellant testified he had been convicted of a felony. Even this statement was improper unless qualified by the further statement that it could be considered only as affecting the credibility of appellant as a witness. The trial judge, in a written opinion

filed when he ruled upon the motion and grounds for a new trial, stated that he admonished the jury when an objection was made to the Commonwealth attorney's statement that appellant had been convicted of a felony, and that no objection to the admonition was made nor was an exception saved. The record fails to show that appellant preserved his right to have the alleged error reviewed.

The judgment is affirmed.