**James Earl ROBINSON, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Oct. 30, 1970.

A. Dale Bryant, Jackson, for appellant.

John B. Breckinridge, Atty. Gen., Laura Murrell, Asst. Atty. Gen., Frankfort, for appellee.

MILLIKEN, Judge.

The appellant, James Earl Robinson, was convicted of the crime of raping his sister-in-law, Eva (Kathy) McIntosh, and was sentenced to ten years in the penitentiary. At a previous trial of the case the jury was not able to agree. He admitted having sexual intercourse with the girl, but contended that he did so with her consent. On appeal, Robinson contends that certain testimony should not have been admitted in rebuttal and that the evidence was insufficient to sustain his conviction of rape.

At the time of trial, Eva McIntosh was nineteen years of age, and according to the testimony of her father and Mrs. Robinson, who testified in behalf of her husband, Eva lacked the intelligence of a normal person. Eva testified that she was walking along the road from the home of her parents on her way to visit her sister, Phyllis McIntosh Robinson, wife of the defendant, James Earl Robinson. Robinson saw Eva and, upon discovering that she was going to her sister's home, offered her a ride. Instead of taking Eva to the home of either of her sisters (Robinson testified she said she was going to the home of her sister, Delcie Lewis, who lived near the Robinson's) he drove on up the road to get some beer. Eva said that she asked to be let out, but he said she did not object to going on. He then took her to Noctor where the act of intercourse took place. Robinson testified that he had hugged Eva and felt of her

body on previous occasions and that she willingly had sexual intercourse with him, which Eva denied. She said that he threw her down on the front seat, ripped her underclothing, and raped her and that she pushed and pulled his hair but could not get loose. Robinson then drove Eva to the home in which he and his wife, Phyllis, lived. Eva told Phyllis that Robinson "fooled with her". Phyllis then called their parents and the two women went to their parents' home in a taxicab. Eva's father got a warrant for Robinson and took Eva to the doctor for examination.

For the purpose of this appeal one issue raised requires reversal of the judgment. After the defense had closed, the prosecution called Delcie Lewis, sister of Eva, to the stand and she testified over the objection of the defense that since the previous trial "James Earl made his brags * * * that * * *". At this point Mrs. Lewis was cut off by a defense objection, which the court sustained. Then the Commonwealth called Robinson to the stand and asked him if he had stated to Mrs. Lewis that he had raped her sister and was not going to serve a day for it and Robinson said, "I did not". Mrs. Lewis was again called to the stand, and testified that Robinson did make such a statement. Delcie said that the asserted confession of Robinson to her occurred in the presence of her husband and Cody Molands, neither of whom was available to testify. In an affidavit filed in support of Robinson's motion for a new trial, Molands swore " * * * on an occasion referred to by Delcie Lewis when the defendant (Robinson) allegedly made statements to Mrs. Lewis concerning the charge against the defendant and affiant states that he was present and that the following is the true substance of what the defendant said at that time to the said Delcie Lewis: 'He was talking to Mrs. Lewis. He said that her sister went out with him, she went on her own and he did not force her. He did not say that he raped her.' "

The penalty for rape of a woman over twelve years of age may be death, life in the penitentiary without privilege of parole, or confinement in the penitentiary for not less that ten nor more than twenty years. KRS 435.090. When we consider that the sole testimony offered to establish that Robinson had sexual intercourse with Eva without her consent was that of Eva as against his testimony that she consented, it is easy to see how prejudicial the belated testimony of Delcie Lewis' could prove to be, for it pertained to the only issue in the case—was the intercourse with or without Eva's consent?

Before discussing the trial status of Delcie's testimony it may be well to recall a bit of the history of the law of evidence as discussed in Wigmore, Sections 575, 576 and, particularly, in Section 579 so far as an accused in a criminal case is concerned. Because they were supposed to be so interested that their testimony would be untrustworthy, the parties to litigation in both civil and criminal cases originally were not permitted to testify. "The competency of accused persons was first declared in Maine in 1864, and was not finally reached in England until 1898; * * * It came later, in general, in the Southern States; and it was sometimes there accompanied by the proviso that the accused should testify, if at all, first in order of the witnesses on his own side." Wigmore, Section 579. Such a proviso still governs in Kentucky, KRS 421.225 (Section 1646 Carrolls, adopted in 1893). At one stage, it had become customary in England to allow the accused to make a statement to the jury—to tell his story, not under oath and not as a witness, but in the guise of an address or argument on the testimony and the whole case. "That the formal grant of competency, then, was so long withheld was due rather to a hesitation founded on the supposed advantage of the accused himself. His failure to use the right of testifying would (it was believed) damage his cause more seriously than if he were able to claim that his silence was enforced by law. But,

chiefly, his exercise of the right to testify would (it was believed), in subjecting him to the ordeal of cross-examination, place him in a situation in which even an innocent man would show at a disadvantage, and would injure more than assist his own cause." Wigmore, Section 579 at page 703.

As a consequence of this historical background, there has grown up in the law a sharp distinction between the self-contradictions of an ordinary witness and the admissions (self-contradictions) of a party to litigation. "The rule requiring that the witness must have been *warned when at the stand,* and asked whether he had made the statement about to be offered as a self-contradiction, has always been understood not to be applicable to the use of a party's admissions—that they may be offered *without a prior warning to the party.*" Wigmore, Section 1057. The historical origin of the rule is plain enough; for until the middle of the 1800's the opponent was neither competent nor compellable to take the stand as a witness in common law trials, and hence it was impossible to ask him about his utterances; a requirement to that effect would have excluded all admission. "Since parties have been made competent and compellable, this obstacle no longer exists in full force. But nevertheless the rule has persisted, and for this there are two sufficient grounds, first, because the opponent may not in fact take the stand, and thus no opportunity for asking him would arise, and, secondly, because the only object of requiring the warning is to provide a fair opportunity of explanation before the witness' departure, whereas a party is in theory present during the trial, and has in fact ample opportunity to protect himself by taking the stand for any explanations which he may deem necessary after hearing the testimony to his alleged admissions." Wigmore, Section 1052.

■ With this historical background in mind, it is obvious that no inquiry from Robinson was needed as a pre-requisite to permitting Delcie to testify. Furthermore,

asking Robinson whether he had made any such statement to Delcie before permitting her to testify did not transform her testimony into impeaching evidence which could be admitted in rebuttal. Delcie's testimony involved an alleged admission on Robinson's part, was clearly substantive in nature, and necessarily had to be introduced in chief. In Williams v. Commonwealth, 290 Ky. 368, 160 S.W.2d 585 (1942), we said, "We have consistently held that any statement in the form of a confession or admission made by the defendant is provable as substantive evidence without the laying of a foundation by first asking the defendant concerning it." Citing Taylor v. Commonwealth, 256 Ky. 667, 76 S.W.2d 923; Wireman v. Commonwealth, 267 Ky. 304, 102 S.W.2d 34. To the same effect, see Woods v. Commonwealth, 250 Ky. 822, 64 S.W.2d 155; Berry v. Commonwealth, 227 Ky. 528, 13 S.W.2d 521; Oney v. Commonwealth, 225 Ky. 590, 9 S.W.2d 723.

In Collier v. Commonwealth, Ky., 339 S.W.2d 167 (1960), a rape case with the same issue as the case at bar—whether the sexual act was done with or without the consent of the woman, and the prosecution introduced similar evidence in rebuttal, we said, "The testimony presented in rebuttal by the Commonwealth in the instant case was not introduced for the purpose of affecting appellant's credibility as witness, but was substantive in character and tended to establish guilt. The introduction of this evidence in rebuttal was, under the circumstances of this case, prejudicial to appellant's obtaining a fair trial." And in Lucas v. Commonwealth, 302 Ky. 512, 195 S.W.2d 90 (1946), in reversing a conviction of murder we noted that the evidence offered was substantive in nature and the only direct evidence of guilt, saying, " * * * it is obvious that the Commonwealth deliberately held the witness back in order to get an advantage. The evidence introduced in rebuttal was purely substantive in nature, and should have been introduced in chief. It was the most damaging evidence offered by the Commonwealth, and

**150**

its introduction during the final stages of the trial was, under the circumstances, prejudicial to appellant's rights."

We conclude that the conviction must be reversed for the reasons indicated. So far as the question of the sufficiency of the evidence offered here to sustain the conviction is concerned, we point to the fact that Kentucky follows the common law rule that the unsupported testimony of the prosecutrix, if not contradictory or incredible, or inherently improbable, may be sufficient to sustain a conviction of rape, 75 C.J.S. Rape § 78, and as late as 1964 in Cook v. Commonwealth, Ky., 379 S.W.2d 228, at page 230, we refused to change our rule to require corroboration. We do not find it necessary to pass on this question in this case, so reserve it.

The judgment is reversed.

All concur.